**Robert S. BOWES III**

v.

**The UNITED STATES.**

No. 380–79C.

United States Court of Claims.

April 8, 1981.

Jack E. Carter, Fayetteville, N. C., attorney of record, for plaintiff. Barrington, Jones, Witcover, Carter & Armstrong, P.A., Fayetteville, N. C., of counsel.

Robert L. Bombaugh, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant. Major Roy L. Dodson, Dept. of the Army, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and KASHIWA, Judge.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

The plaintiff in this military pay case challenges the procedures by which he was given a letter of reprimand that was placed in his Official Military Personnel File. Following the reprimand and, according to the plaintiff, as a result of it, he was twice passed over by selection boards for promotion to the permanent rank of major, and as a consequence, was honorably discharged from the Army. In this suit, he seeks elimination of the letter of reprimand from his file, restoration to duty, promotion to the permanent rank of major, and backpay and allowances. Both parties have moved for summary judgment, and we heard oral argument. We hold that the procedures the Army followed in issuing the letter of reprimand and placing it in the plaintiff's file were proper. Accordingly, we grant the defendant's motion for summary judgment and dismiss the petition.

### I.

In 1972 the plaintiff was on active duty as a major in Vietnam, serving as an adviser to the Army of the Republic of Vietnam. On January 12, 1973, Major General Garth, the Commander of the Third Regional Assistance Command in South Vietnam, issued a proposed letter of reprimand to the plaintiff. The first two paragraphs of the letter stated:

1. It has been reported to me that on 28 November 1972 you approached Corporal Le Van Thon, an Army of the Republic of Vietnam soldier, and gave him 50,000 $VN Piasters for the purpose of conversion into US Currency (greenbacks) on the black market. When you noted that CID agents were in the area, you attempted to withdraw from the illegal conversion, but on 3 December 1972, you accepted $100.00 in US currency from Corporal Thon. Further, when confronted by police authority you admitted selling war trophies on the black market in Saigon, Republic of Vietnam, for the purpose of personal profit.

2. These activities are a serious violation of regulations governing the conversion of money in Vietnam and the appropriate disposition of war trophies. Your conduct is even more reprehensible because you indicated a desire to convert up to 222,000.00 $VN Piasters (about $450.00) and, as a custodian of Assistance In Kind funds, the faith and trust placed in you was called into question. Further, in your capacity as advisor and custodian of funds, your sale of US produced furniture shortly before you instituted the conversion transaction, permitted speculation that you converted the receipt of the sale to your own use and benefit.

The letter stated that the plaintiff's actions "have resulted in severe embarrassment not only to yourself and your associates in advisory capacities, but upon the Officer Corps, this Command, and the United States Government" and "admonished" the plaintiff "to conduct yourself in the future in accordance with those high standards required of an officer of the United States Army." The letter further stated: "This letter of reprimand is imposed as an administrative measure and not as punishment under Article 15, UCMJ. It is forwarded for inclosure in your Official Military Personnel File (OMPF) maintained by The Adjutant General."

Prior to the sending of the letter of reprimand, General Garth had proposed to impose nonjudicial punishment upon the plaintiff under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815, for the plaintiff's violation of the Army currency conversion regulations "by converting piasters into U.S. currency (5 twenty dollar bills)." The plaintiff rejected the Article 15 punishment and instead demanded trial by court-martial (as Article 15 permits). He appended a statement giving reasons why he believed he should not be court-martialed.

Court-martial charges then were preferred against the plaintiff, alleging in the same language as the proposed imposition of nonjudicial punishment that he had violated the currency conversion regulations. The charges were referred to an investigating officer who, after hearing sworn testimony, recommended that the plaintiff not be court-martialed because, in his judgment, the CID agents had entrapped plaintiff into violating the currency directives. The investigating officer recommended that since the plaintiff previously had declined nonjudicial punishment under Article 15, the plaintiff should "be given a strong administrative admonishment or reprimand."

The proposed letter of reprimand directed the plaintiff to submit a written reply in accordance with the governing regulation (discussed *infra* p. 964). The plaintiff filed a lengthy response. With respect to the currency conversion incident, the plaintiff's reply included the following statements:

There are several matters related in the letter of administrative reprimand which are incorrect or misleading. The letter states that when I noted that CID agents were in the area, I attempted to withdraw from the conversion. I did not know or have any idea that Corporal THON had reported the incident to the CID. I withdrew from the conversion because I thought better of such conduct and realized it was not befitting an officer.

\* \* \* \* \* \*

At no time did I "accept" any U.S. currency from CPL THON. After I told him that I wanted the piastres back, he, unbe-

kownst [sic] to me, reported this to the CID agents. The CID agents disregarded this and instructed him to give me the U.S. currency anyhow. Whether it was the momentum of of [sic] the CID's plan or whether CPL THON had an ulterior motive, CPL THON accomplished the instructions given him by approaching me from the rear and shoving the U.S. currency into my fatigue trouser pocket. I was then apprehended by the CID. At the time, I believed that he was placing in my pocket the piastres which I had requested from him the previous afternoon.

With respect "to the sale of 'war trophies,'" the plaintiff stated that because of the Republic of Vietnam Army's scarcity of ammunition in the area, he decided to "scrounge" it, that he traded weapons that the Republic of Vietnam Army had captured from the enemy for "large quantities of ammunition that were scheduled for destruction or turn in" and that he understood that

> the directives pertaining to dealing in war trophies appled [sic] only to weapons captured by U.S. forces which automatically become the property of the U.S. Government. Since the weapons available to me were not captured by U.S. forces, I believed that I could use these weapons for sale or trade.

The plaintiff's reply did not respond to the statement in General Garth's letter that the plaintiff's "sale of US produced furniture shortly before you instituted the conversion transaction, permitted speculation that you converted the receipts of the sale to your own use and benefit."

On January 20, 1973, the letter of reprimand was forwarded to the Department of the Army for inclusion in the plaintiff's Official Military Personnel File, together with the enclosures relating to the court-martial charges and the report of the investigating officer. The governing regulation required that the plaintiff's response be included in the file (see p. 964, *infra*), and the record shows that in July 1977 it was part of the file. At oral argument the plaintiff conceded that his response was included.

Three years later, on January 12, 1976, the plaintiff filed a letter of appeal with the Department of the Army Suitability Evaluation Board (Suitability Evaluation Board). The Army established this board "as the appeal authority for matters of adverse information entered in the Official Military Personnel File." ¶ 5–1, Army Regulation (AR) 600–37. The plaintiff requested that the letter of reprimand and all pertinent documents be removed from his file "or at the minimum, that those allegations contained in the letter which were not the subject of any formal investigation be eliminated."

The Suitability Evaluation Board denied the appeal on the ground that the plaintiff had "not submitted substantive evidence as required by paragraph 5–3, AR 600–37 to show that the letter of reprimand is either unjust or untrue." The Board "note[d] that by your own admission you made arrangements to convert a substantial amount of piasters to US currency, a conversion which was a clear violation of the currency regulations then in effect, a fact which you either knew or should have known."

Following the decision of the Suitability Evaluation Board, the plaintiff filed with the Department of the Army Board for the Correction of Military Records (Correction Board) an application to remove from his Official Military Personnel File the letter of reprimand and one pass-over by the selection board to the permanent rank of major. The Board denied relief. It informed the plaintiff that

> [a]fter consideration of all the evidence the Board determined that there appeared to be sufficient justification for the letter of reprimand given you; that by your own admission you made arrangements to convert a substantial amount of piasters to United States currency; that further, based on a review of your entire record there was no basis for a correction of records to show your promotion to the grade of Major, Regular Army.

## II.

A. In issuing the letter of reprimand to the plaintiff and having it placed in his Official Military Personnel File, General Garth acted pursuant to and in compliance with AR 600–37. That regulation provides "policies and procedures" (¶ 1–1) governing the inclusion in military files of unfavorable information concerning military personnel. Among the objectives of the regulation are to "[p]rotect the rights of individual members of the Army, and, at the same time, protect the right of the Army to consider all available information when selecting individuals for positions of leadership, trust, and responsibility" (¶ 1–3.b), and to "[p]rovide safeguards from adverse personnel action based on unsubstantiated allegations or mistaken identity." ¶ 1–3.c.

The regulation states in chapter 2 that "[u]nfavorable information will not be filed in an official personnel file without the knowledge of the affected individual and an opportunity being afforded him to make a written statement in reply to the unfavorable statement, or to decline, in writing, to make such a statement [with exceptions not relevant here]. . . . Initiating officers should fully substantiate and document allegations." ¶ 2–1.b. The regulation provides that a nonpunitive administrative reprimand (such as the plaintiff received) may be placed in the Official Military Personnel File only if (1) a general officer issues the reprimand and directs that it be included in the file, and (2) it has been referred for comment to the individual concerned. The regulation further provides that statements furnished by the individual "will be reviewed by the official imposing the administrative reprimand . . . and will be attached to the basic written comment prior to filing it in the official personnel files." ¶ 2–4.

In reprimanding the plaintiff, General Garth complied with these requirements. Prior to taking that action, General Garth gave the plaintiff a copy of the proposed reprimand and the opportunity to respond in writing, which the plaintiff did. The plaintiff's reply was included in the papers forwarded for inclusion in the plaintiff's file. Persons reviewing the plaintiff's file, as the selection boards did, would have before them not only the letter of reprimand and the supporting documentation relating to the investigation of the court-martial charge against the plaintiff, but also the plaintiff's explanation of the events and the justification he offered for his conduct.

Both the Suitability Evaluation Board and the Correction Board pointed out that the plaintiff admitted that he "made arrangements to convert a substantial amount of piasters" to United States currency. The plaintiff's defense was that he did not complete the conversion but had attempted to cancel the transaction before it was completed, and that Corporal Thon had placed the American money in his pocket at the instigation of the CID agents. General Garth was warranted in reprimanding an officer who admittedly at least attempted to violate the currency exchange regulation by taking the first step of giving piasters to Corporal Thon to exchange for American dollars. This was the kind of information the Army would want to consider "when selecting individuals for positions of leadership, trust, and responsibility" and to "[i]nsure that individuals of questionable moral character are not continued in the service or elevated to positions of leadership and responsibility"—which are two of the stated "[o]bjectives" of AR 600–37. ¶ 1–3.b, e.

B. The plaintiff, however, contends that under the regulation General Garth was required to "substantiate" the charge against the plaintiff by documentary support before forwarding the reprimand for inclusion in the plaintiff's Official Military Personnel File and that the proposed letter of reprimand that was furnished to the plaintiff for comment should have included that documentation. He relies on the statement in paragraph 1–1.b of AR 600–37 that the "policies and procedures" the regulation established were designed "[t]o insure that *unsupported* or unresolved unfavorable information, which may prejudice the individual's reputation or future in the military

service, is not filed in an individual's official personnel files (chap. 2)." (Emphasis added.) As the parenthetical reference in that provision to "chap. 2" indicates, however, the method used to prevent the filing of unsupported unfavorable information in the file was to follow the procedures specified in chapter 2 of the regulation. We have pointed out in point II.A. of this opinion that those procedures were followed in this case. There is nothing in chapter 2 requiring that a letter of reprimand have supporting documentation before it may be placed in an Official Military Personnel File.

As we have shown, General Garth had an adequate basis for issuing the letter of reprimand and having it placed in the plaintiff's file. General Garth had available not only the extensive material developed in the investigation of the court-martial charges against the plaintiff, but the plaintiff's own admission made twice—in rejecting the Article 15 punishment and in answering the proposed letter of reprimand—that he had given piasters to Corporal Thon for conversion to United States dollars. General Garth also had available the plaintiff's responses to the other charges in the letter of reprimand. Prior even to issuing the proposed letter of reprimand to the plaintiff, General Garth had become familiar with the case when he proposed to impose nonjudicial punishment upon the plaintiff under Article 15 of the Uniform Code of Military Justice.

The letter of reprimand stated that it was "imposed as an administrative measure and not as punishment." The nature of a letter of reprimand—an administrative censure of an officer for dereliction of duty—indicates that the additional requirements the plaintiff would engraft onto the procedures specified in the regulation would be inappropriate and unnecessary. Those requirements would seriously weaken the effectiveness of the reprimand as a method for dealing with various types of dereliction of duty.

■ The procedures under the regulation protected the plaintiff against the inclusion in his file of unjustified unfavorable information. By giving the plaintiff the opportunity to reply to the proposed reprimand and requiring General Garth to review the reply before directing the inclusion of the reprimand in the plaintiff's file, those procedures were consistent with the objective in paragraph 1–3.c of the regulation (upon which the plaintiff relies) to "[p]rovide safeguards from adverse personnel action based on unsubstantiated allegations. . . ."

C. The plaintiff further contends that the decision of the Suitability Evaluation Board was improper because that Board put the burden of disproving the allegations in the letter of reprimand upon the plaintiff instead of itself making an independent determination that those allegations were substantiated. The regulation, however, prescribes precisely the procedure the Suitability Evaluation Board followed.

Paragraph 5–3 of AR 600–37 provides:

Once an official document containing adverse information is accepted by [Headquarters, Department of the Army] for inclusion in official personnel files, the individual has the burden of proving that the document is unjust or untrue, in part or in whole, and therefore should be removed from the record or amended. Any individual may appeal the inclusion of a document placed in his file under the provisions of this regulation. However, an individual appealing inclusion of such a document in his file must submit substantive evidence to support his claim that it is unjust or untrue.

■ In deciding the plaintiff's appeal, the Suitability Evaluation Board followed that standard. Although the plaintiff submitted additional material to that Board, we cannot say that the Board was unjustified in concluding that the plaintiff had not "submitted substantive evidence" that the letter of reprimand is either "unjust or untrue." The Board had before it not only the plaintiff's admission that he made arrangements to convert a substantial amount of piasters to United States currency, but also the information developed during the investigation of the court-martial charges against the plaintiff.

The Army was warranted in placing the burden upon the plaintiff to prove by substantive evidence before the Suitability Evaluation Board that the letter of reprimand placed in his file in accordance with the procedures specified in the regulations was unjust or untrue. The regulation establishes an appellate procedure by which the Suitability Evaluation Board reviews the placing of unfavorable information in an Official Military Personnel File. It is the normal practice to require an appellant to establish before the appellate tribunal that the administrative action he challenges is erroneous. There is no reason why this principle should not be applied to appeals to the Suitability Evaluation Board.

D. For the reasons given in point II.C. we cannot say that the Correction Board erred in concluding that there was "sufficient justification for the letter of reprimand" and refusing to eliminate it from the plaintiff's Official Military Personnel File.

## CONCLUSION

The plaintiff's motion for summary judgment is denied, the defendant's motion is granted, and the petition is dismissed.