**UNITED STATES of America,**

v.

**Clifton S. BURNS, Defendant.**

**No. N098559.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 18, 1998.

Kim Crump, Norfolk, VA, for Defendant.

Casey A. Kniser, Special Assistant U.S. Attorney, Norfolk, VA, for United States of America.

*OPINION AND ORDER*

MILLER, United States Magistrate Judge.

On April 28, 1998, defendant Clifton S. Burns, an enlisted member of the United States Navy, was charged with attempted

larceny of government property of a value not exceeding $1000.00. The offense took place at the Navy Exchange ("NEX") at the Naval Amphibious Base Little Creek in Norfolk, Virginia. A criminal information was later filed, on May 26, 1998, charging that Burns "willfully, knowingly, and unlawfully, did steal, purloin and convert to her (sic) use or the use of another, property of a department of agency of the United States of a value not exceeding $1000.00" in violation of Title 18, United States Code, Section 641.

On June 4, 1998, Burns appeared before this Court and requested appointment of counsel. The Court granted Burns' request for appointment of counsel,[1] set an unsecured $1000.00 bond, ordered conditions of release, and continued the case to July 9, 1998.

On June 24, 1998, Burns received nonjudicial punishment ("NJP")[2] from his commanding officer for larceny of government property, the same offense charged in the criminal information. Burns received the following punishment: (1) restriction to his unit for 30 days, (2) extra duties for 30 days, (3) forfeiture of 1/2 of 1 month's pay ($519.00), and (4) reduction 1 pay grade (suspended).

On July 9, 1998, this case was again continued to August 6, 1998. On August 6, 1998, Burns pleaded guilty to the larceny charge in the criminal information. At sentencing, however, this Court allowed Defendant to withdraw his guilty plea and continued the case for consideration of whether there is a double jeopardy issue. The Court directed the parties as to deadlines for filing motions regarding the double jeopardy issue.

On September 14, 1998, defendant filed a motion. In the motion, the defendant moves the Court for dismissal of the charge against Burns based on double jeopardy. On September 18, 1998, the government filed a response to defendant's motion to dismiss. On

November 13, 1998, the government filed an addendum to its response to defendant's motion to dismiss.[3]

Therefore, pending before the Court now for disposition is whether prior administration of nonjudicial punishment imposed pursuant to Article 15 of the Uniform Code of Military Justice ("UCMJ") by the United States military (Navy) on a defendant for a serious offense, here larceny, bars subsequent prosecution by the United States for the same offense because it constitutes double jeopardy.

After a review of the materials submitted by the parties, and the applicable statutory and case law, the Court DENIES the defendant's motion to dismiss because prior administration of NJP by the United States military for a serious offense, such as larceny, does not bar subsequent prosecution by the United States for the same offense; it does not constitute double jeopardy. However, the Court notes, NJP must be considered by this Court in determining a sentence for defendant.

## I. ANALYSIS

■ The defendant and the government both cite cases involving the same defendant, a member of the U.S. Army who received NJP for an offense and was subsequently convicted of the same offense at court-martial, in support of their respective arguments. The defendant cites *United States v. Pierce*, 25 M.J. 607 (A.C.M.R.1987), while the government cites a later proceeding concerning the same defendant, *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989). The cases cited set forth that, in a military context, prior NJP does not raise double jeopardy problems for a subsequent prosecution at court-martial, where the offense is a "serious" one.[4]

---

1. Burns was required to reimburse the government for counsel at a rate of $50.00 per month beginning on June 22, 1998 and continuing thereafter.

2. Nonjudicial punishment is found in Article 15 of the Uniform Code of Military Justice ("UCMJ"). *See* 10 U.S.C. § 815.

3. The government concedes in its response and addendum to its response that the United States

and the United States Navy are the same sovereign.

4. Both parties agree that larceny of government property, the offense in the case at bar, is a "serious" offense. *See United States v. Fretwell*, 29 C.M.R. 193, 196 (C.M.A.1960) (military court has described larceny as an offense involving "moral turpitude" which is not to be treated as minor).

Both parties reach the conclusion, therefore, that NJP imposed by the United States military for an offense does not prevent a subsequent prosecution by the United States for the same offense.[5]  Both parties also state that the consideration of NJP is appropriate in determination of a sentence for the charges pending before the Court.

While this Court ultimately reaches the same conclusion as the parties, that prior NJP imposed on a defendant for an offense does not subsequently bar prosecution for the same offense by the United States based on double jeopardy grounds, the Court does so after an examination of more recent case law pertaining to the issue, as discussed below.

### A. General Principles of the Double Jeopardy Clause

Pursuant to the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, persons shall not be put twice in jeopardy for the same offense.  U.S. CONST. amend. V (no person shall "be subject for the same offense to be twice put in jeopardy of life or limb").  The United States Supreme Court has held many times that the Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (citing *United States v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)); *see also United States v. Ursery*, 518 U.S. 267, 293, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

The first two protections under the Double Jeopardy clause are clearly inapplicable to the instant case because the defendant is not facing a second prosecution after a prior conviction or acquittal.  Rather, the Court is faced with the third protection under the Clause—whether the defendant is being exposed to multiple punishments for the same offense when NJP imposed by a United States Navy officer is followed by a criminal prosecution by the United States.  In order to be protected from further prosecution, Burns must have been punished criminally for the same offense.  *See Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938) ("the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense").

### B. United States v. Gammons

In deciding this case, the Court looks at the analysis in a recent military case, *United States v. Gammons*, 48 M.J. 762 (1998), where the U.S. Coast Guard Court of Criminal Appeals had before it a case similar to the instant case.  There, the defendant had received prior NJP for offenses and was later convicted by special court-martial of the same offenses.  The *Gammons* court ultimately followed the holding in *Pierce*, and held that "prior nonjudicial punishment of a serious offense does not bar subsequent court-martial for the same offense on double jeopardy grounds."  *Id.* However, that court expressed in its opinion that it believed there might be changes in military case law required as a result of recent Supreme Court decisions, and that their holding was a result of having to "follow the military rulings until they are modified by [a] higher court."  *Id.* at 764.

#### 1. The *Gammons* Court's Analysis [6]

The *Gammons* court says that the recent Supreme Court decision, *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), "expresses an outlook on double jeopardy that may affect the underlying rationale of the military case found to be

---

**5.** The issue now before the court is found discussed in military cases.  In the military, imposition of nonjudicial punishment for a serious offense does not preclude the subsequent court-martial of a soldier for the same serious offense.  *See* UCMJ art. 15(f); 10 U.S.C. § 815.  Therefore, the Court finds it may follow that "if prior NJP does not raise double jeopardy problems for a subsequent prosecution within a military context, neither should a prior NJP bar subsequent

prosecution in a federal court."  *United States of America v. Burns*, Docket No. 985599, Government's *Response to Motion to Dismiss* (filed September 18, 1998).

**6.** Although the analysis in *Gammons* is essentially dicta, this Court finds it persuasive and therefore, uses it as a basis for this decision.

controlling, ... U.S. v. Pierce." *Gammons,* 48 M.J. at 763. This is because "[c]entral to the *Pierce* opinion was its holding that Article 44, UCMJ, is by its terms inapplicable to nonjudicial punishments".[7] That holding was consistent with a prior cited decision, *U.S. v. Fretwell,* which found that "neither Article 44 nor the Constitution's Fifth Amendment jeopardy clause applied to nonjudicial punishments because those provisions bar subsequent trials only when there has been a prior judicial proceeding for the same offense." *Id.* (citations and footnotes omitted).

*Pierce* is the case relied upon by the parties in the instant case. *Hudson,* however, makes it clear that "a judicial proceeding is not a necessary predicate for invocation of the Fifth Amendment's double jeopardy clause." *Gammons,* 48 M.J. at 763. In order to invoke the Fifth Amendment's double jeopardy clause, the threshold question is "whether the successive punishment at issue is a 'criminal' punishment." *Hudson,* 118 S.Ct. at 494.[8] The *Hudson* court found that "administratively-imposed civil penalties can be seen as the equivalent of criminal punishment for double jeopardy purposes, if certain tests are met." 48 M.J. at 763.

This Court believes that the *Gammons* court's analysis is correct to this point and that here, reliance by the parties on *Pierce* is not appropriate in light of the recent *Hudson* Supreme Court case. The question in the instant case, therefore, becomes whether NJP amounts to criminal punishment, and is therefore protected under the Fifth Amendment to the Constitution. Here, this Court differs with *Gammons* because the *Gammons* court expressed that NJP should be considered a criminal punishment; whereas this Court decides that NJP is not criminal punishment.

### 2. *Determining Whether Punishment is Criminal*

■ There are two steps that the Supreme Court considers to determine whether a statutory penalty amounts to a criminal sanction. *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997); *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). First, the Court determines whether the legislature "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or another." *Ward,* 448 U.S. at 248, 100 S.Ct. 2636. Second, even where a criminal penalty was not the legislature's intent, a further inquiry must be made as to whether the statute's purpose or effect in fact transforms a civil remedy into a criminal penalty. *Hudson,* 118 S.Ct. at 493, citing *Ward,* 448 U.S. at 248–49, 100 S.Ct. 2636 and *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956).

### 3. *NJP Is Not Criminal Punishment*

■ This Court finds that NJP is not criminal punishment for the following reasons, which includes this Court's examination and rejection of the reasoning in the *Gammons* case which found that NJP is criminal punishment.

#### a. *Intent of Congress: NJP Is Not a Criminal Sanction*

The *Gammons* court stated that it agreed with the observation made by the appellant in that case that Congress, "through the Uniform Code of Military Justice, and the President, through the Manual for Courts–Martial, 'have manifested a plain intent that NJP be a criminal sanction.'" *Gammons,* 48 M.J. at 764. However, the only support the court cites for this proposition is Appellant's Answer Brief. This Court, to the contrary, finds no evidence that Congress' intent was

---

7. Article 44 of the UCMJ states: "No person may, without his consent, be tried a second time for the same offense." 10 U.S.C. § 844.

8. The *Hudson* opinion disavowed an earlier opinion, *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and reaffirmed a previously established rule exemplified in *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). The *Hudson* opinion criticized *Halper* for bypassing the threshold question of whether the legislature intended the particular successive punishment to be criminal and for assessing the character of the actual sanctions imposed rather than evaluating the statute on its face to determine whether it provided for what amounted to a criminal sanction. *Hudson,* 118 S.Ct. at 488, 494.

that NJP be a criminal sanction; rather, it finds ample evidence that NJP was not intended to be a criminal sanction.

First, it is stated in the legislative history of an amendment to Article 15, UCMJ, that the purpose of Article 15 "provides a means whereby military commanders deal with minor infractions of discipline without resorting to criminal law processes." S.REP. No. 87–1911 (1962), reprinted in 1962 U.S.C.C.A.N. 2379, 2380. Further, "[s]ince the punishment is nonjudicial, it is not considered as a conviction of a crime...." *Id.*

Second, Part V of the Manual for Courts–Martial (1995) ("MCM"), which implements the provisions of Article 15, UCMJ, by Executive Order, describes NJP as a "disciplinary measure" more serious than lesser administrative measures "but less serious than trial by court-martial." MCM, Part V, par. 1b. NJP provides military commanders with "an essential and prompt means of maintaining good order and discipline and also promotes positive behavior changes in service members without the stigma of a court-martial conviction." *Id.* at 1c. Notably, in the section of the MCM pertaining to obstruction of justice, the manual specifically points out that "[f]or purposes of this paragraph 'criminal proceedings' includes nonjudicial punishment under Part V of this Manual." MCM, Part IV, par. c. Only in this section of the manual has "the term criminal proceeding been given a broad interpretation." *See* Major David D. Jividen, *Charging Post–Offense Obstructive Actions,* 40 A.F.L.REV. 113, 116 (1996). This seems to suggest to this Court that unless it is specifically included as a criminal proceeding in a section of the MCM, as it was in Part IV, NJP is not to be considered a criminal proceeding.

In addition, Article 15, UCMJ, specifically states that it is intended to punish minor offenses only and that "the imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article ...." UCMJ, art. 15(f).

The government also points out in its addendum to its response that several aspects of NJP reveal a non-criminal character, including a lack of rules of evidence applicable to NJP proceedings, a lack of rights afforded to the person being punished, and imposition of NJP without a finding of guilt beyond a reasonable doubt. *See* MCM, Part V, 4c(3), 4c(1)(B). Finally, there is case law supporting the fact that NJP is non-criminal in nature. *See, e.g., Wales v. United States,* 14 Cl.Ct. 580, 587 (1988) (NJP "is not a formal adversary proceeding, but is regarded as noncriminal in nature"; NJP is "the least formal method of reviewing alleged violations of the [UCMJ]"); *Middendorf v. Henry,* 425 U.S. 25, 31–32, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) (Article 15 punishment is an administrative method of dealing with the most minor offenses).

### b. Application of Guideposts from Kennedy v. Mendoza– Martinez

Even where legislative intent indicates that a sanction is not a criminal punishment, double jeopardy analysis requires that the Court consider whether the form and effect of a NJP sanction renders it criminal in fact. *Hudson,* 118 S.Ct. at 495.

The *Gammons* court states that "[i]n choosing whether to characterize an Article 15 sanction as a civil penalty or criminal punishment, it strikes us that criminal punishment is a much more appropriate term for this form of disciplinary action than civil penalty." *Gammons,* 48 M.J. at 764. The *Gammons* court decides this by appropriately "applying" the seven guideposts from *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Id.* However, the *Gammons* court merely listed the seven factors of consideration from *Kennedy,* and did not provide their analysis for concluding that Article 15 punishment constitutes criminal punishment.

The seven guideposts from *Kennedy* used to determine whether a sanction is criminal include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional

aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *See Kennedy*, 372 U.S. at 168–69, 83 S.Ct. 554.

This Court notes that many of the factors above would lead it to conclude that NJP is not a criminal punishment. First, the sanctions imposed in this case do not involve an "affirmative disability or restraint, as that term is normally understood." *Hudson*, 118 S.Ct. at 495. In this specific case at bar, while Burns has been prohibited from certain activities and given extra duties, this is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Id.*, citing *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

Similar to the case at bar, in *United States v. McAllister*, 119 F.3d 198, 200 (2nd Cir. 1997), a commanding officer took disciplinary measures against a soldier in the United States Army for a misdemeanor offense.[9] In that case, the Court said that "[s]uch sanctions do not ... invoke the power of the state to punish in the manner of a sentence of imprisonment," and held that the sanctions "were not the type of 'punishment' that triggers the protection of the Double Jeopardy Clause and bars further punishment." *Id.* This was true despite any punitive intention. *Id.* at 198. In addition, the Court viewed the government's action against the defendant in that case not as the government acting in its capacity as a sovereign, but rather as an employer. *Id.* at 200. The government points out that in the instant case, loss of rank resembles an administrative reduction of a civilian employee for misconduct. "Such sanctions do not require use of sovereign power or invoke the power of the state to punish in the manner of a sentence of imprisonment." *Id.* Lastly, the government notes in its response that forfeiture of pay in this case reduces Burns' pay only insofar as he is entitled to it, whereas a criminal fine is due without reference to any entitlement.

Second, this Court finds that while NJP has been historically regarded as a punishment, it was not historically regarded as a criminal punishment, as was discussed above. And even if the conduct punished at NJP is traditionally criminal, this fact alone should not be decisive for double jeopardy analysis. *See Hudson*, 118 S.Ct. at 496.

Third, NJP does not come into play **only** on a finding of scienter. Article 15, UCMJ states that: "any commanding officer may ... impose one or more of the ... disciplinary punishments for minor offenses ...;" this is without regard to the violator's state of mind. *Compare Hudson*, 118 S.Ct. at 495. The officer imposing NJP simply decides whether or not the service member committed the offenses alleged.

Fourth, although the imposition of penalties in this case will deter others from emulating the defendant's conduct, which is a traditional goal of criminal punishment, mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may "serve civil as well as criminal goals." *See Hudson*, 118 S.Ct. at 496, citing *Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 2148–9, 135 L.Ed.2d 549. The sanctions in the instant case could be administrative and/or remedial—a method of dealing with offenses to promote good order and discipline within the military. *See Wales*, 14 Cl.Ct. at 590. To hold that the mere presence of a deterrent purpose renders such sanctions "criminal" for double jeopardy purposes would undermine the Government's ability to maintain order throughout its military organizations. *Compare Hudson*, 118 S.Ct. at 496.[10]

In addition, "these factors [above] must be considered in relation to the statute on its face," and "only the clearest proof" will suffice to override legislative intent and trans-

**9.** The soldier received a letter of reprimand, a reduction in rank, suspension of privileges, and his re-enlistment was barred.

**10.** The government points out an analogy: that in the prison context, the need for maintaining order is such that "disciplinary segregation" has

a sufficient remedial motive to offset the collateral deterrent effect of the sanction. *United States v. Hernandez–Fundora*, 58 F.3d 802, 806 (2nd Cir.), *cert. denied* 515 U.S. 1127, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995).

form what has been denominated a civil remedy into a criminal penalty. *Hudson*, 118 S.Ct. at 493, citing *Kennedy*, 372 U.S. at 169, 83 S.Ct. 554 and *United States v. Ward*, 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). As this Court has discussed, the statute on its face did not intend for NJP to be a criminal penalty and there is no "clear proof" suggesting that NJP is "so punitive in form and effect as to render them criminal despite Congress' intent." *Ursery*, 116 S.Ct. at 2135.

Therefore, this Court finds that because NJP is not criminal punishment, it is not a double jeopardy for the United States to prosecute Burns for the same offense for which he received prior NJP. Further, this Court agrees with the parties that the consideration of NJP is appropriate in determination of a sentence for the charges pending before the Court, as it has been consistently upheld by the courts that consideration of NJP complies with due process. *See, e.g., United States v. Thompson*, 41 M.J. 895, 897 (1995), citing *Pierce*, 27 M.J. at 368.

## II. *CONCLUSION*

For the foregoing reasons, the Court DENIES the motion to dismiss based on double jeopardy.

The Clerk shall mail a copy of this Opinion and Order to all counsel of record.