58 P.3d 643

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Jerad Dean MYERS, Defendant–Appellant.**

**No. 24731.**

Supreme Court of Hawai'i.

Dec. 4, 2002.

---

Earle Partington, Honolulu, on the briefs, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by RAMIL, J.

Defendant-appellant Jerad Myers appeals from a district court judgment of conviction for driving under the influence of intoxicating liquor ("DUI"). Myers contends that the district court erred in denying his motion to dismiss the DUI charge following his nonjudicial punishment for the same conduct pursuant to 10 U.S.C. § 815 (2002). The single issue in this case is whether an Article 15 nonjudicial punishment is equivalent to a criminal conviction as defined in Hawai'i Revised Statutes ("HRS") § 701–110(3) (2001).

We hold that the district court did not err by denying Myers's motion to dismiss the DUI charge. By its terms, the military proceeding resulting in Myers's nonjudicial punishment pursuant to 10 U.S.C. § 815 does not amount to a "criminal prosecution." Hence, no criminal conviction resulted from this proceeding. Accordingly, the district court trial was not barred by HRS § 701–112(1).

## I. BACKGROUND

The facts of this case are undisputed. On November 14, 2000, Myers, an active duty member of the United States Coast Guard ("USCG"), was arrested by Officer Lum of the Honolulu Police Department ("HPD") for DUI. Myers was arraigned in the District Court of the First Circuit on December 14, 2000, and entered a plea of not guilty.

Prior to Myers's trial in the district court, the commanding officer of USCG Cutter Jarvis charged Myers with DUI, in violation of the Uniform Code of Military Justice ("UCMJ") Article 111(a)(2), 10 U.S.C. § 911(a)(2)[1] and imposed a nonjudicial punishment upon Myers pursuant to UCMJ Article 15, 10 U.S.C. § 815.

Thereafter, Myers moved in the district court to dismiss his DUI charge with prejudice. In his motion, Myers contended that, because he had already been "punished" by the military for his DUI, any prosecution by the state was barred on statutory grounds based on HRS §§ 701–112(1) and 701–110(3). The prosecution filed its memorandum in opposition on May 9, 2001 and argued that HRS §§ 701–112(1) and 701–110(3) did not bar the state from prosecuting Myers. The prosecution contended that, although Myers had been subjected to an Article 15 nonjudicial proceeding, pursuant to congressional intent and federal case law, his nonjudicial punishment is not a criminal conviction, and, thus, the state could prosecute him for violation of state DUI laws.[2]

After a hearing on May 14, 2001, the district court took the matter under advisement. The district court later denied the motion by written order filed on June 12, 2001.

Following a stipulated facts trial, the court found Myers guilty of DUI. The district court imposed the minimum sentence, which included a fine of $150, along with court costs

1. UCMJ Art. 111(a)(2) (10 U.S.C. § 911(a)(2)) provides in pertinent part:
(a) Any person subject to this chapter who—
. . . .
(2) operates or is in actual physical control of any vehicle, aircraft, or vessel while drunk or when the alcohol concentration in the person's blood or breath is in excess of the applicable limit under subsection (b), shall be punished as a court-martial may direct.
(b)(1) For purposes of subsection (a), the applicable limit on the alcohol concentration in a person's blood or breath is as follows:

(A) In the case of the operation or control of a vehicle, aircraft, or vessel in the United States, such limit is the blood alcohol content limit under the law of the State in which the conduct occurred.

2. As Myers's punishment, his Coast Guard Commander ordered him to perform two hours of extra duties for a period of thirty days. He was also restricted to the limits of his assigned ship, the USCG Cutter Jarvis, for nineteen days.

and fees of $132. Sentence was stayed pending appeal. This appeal followed.

## II. STANDARD OF REVIEW

■ As the issue on appeal is strictly a matter of law, the standard of review is *de novo*. *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995).

## III. DISCUSSION

In this jurisdiction, statutory authority precludes separate sovereigns from prosecuting the same defendant for the same offense. HRS §§ 701–110(3) and 701–112(1) read respectively as follows:

§ **701–110. When prosecution is barred by former prosecution for the same offense.**

When a prosecution is for an offense under the same statutory provision and is based on the same facts as a former prosecution, it is barred by the former prosecution under any of the following circumstances:

. . . .

(3) *The former prosecution resulted in a conviction.* There is a conviction if the prosecution resulted in a *judgment of conviction* which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty or nolo contendere accepted by the court.

§ **701–112. Former prosecution in another jurisdiction: when a bar.**

When behavior constitutes an offense within the concurrent jurisdiction of this State and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this State under any of the following circumstances:

(1) *The first prosecution resulted in . . . a conviction as defined in section 701–110(3), and the subsequent prosecution is based on the same conduct,* unless:

(a) The offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil; or

(b) The second offense was not consummated when the former trial began.

(Emphasis added.)

The single issue in this case is whether an Article 15 nonjudicial punishment is equivalent to a criminal "conviction" as defined in HRS § 701–110(3). If so, the state's prosecution is barred under HRS § 701–112(1).

■ To determine whether an Article 15 nonjudicial punishment is a criminal conviction, we must understand its terms and design. An examination of United States Supreme Court authority, other federal court precedent, and the congressional history accompanying the enactment of the current Article 15 leads us to the conclusion that an Article 15 nonjudicial proceeding is not intended to, and does not, constitute "criminal prosecution." Accordingly, a nonjudicial punishment resulting from an Article 15 proceeding is not a criminal conviction within the meaning of HRS 701–110(3).

The UCMJ provides four methods for disposing of cases involving offenses committed by service personnel: (1) general court-martial, (2) special court-martial, (3) summary court-martial, and (4) disciplinary punishment administered by the commanding officer pursuant to Article 15 UCMJ, 10 U.S.C. § 815. *Middendorf v. Henry*, 425 U.S. 25, 31, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). "General and special courts-martial resemble judicial proceedings, nearly always presided over by lawyer judges with lawyer counsel for both the prosecution and the defense." *Id.* "**General** courts-martial are authorized to award any lawful sentence, including death." *Id.; see also*, Art. 18 UCMJ, 10 U.S.C. § 818. "**Special** courts-martial may award a bad-conduct discharge, up to six months' confinement at hard labor, forfeiture of two-thirds pay per month for six months, and in the case of an enlisted member, reduction to the lowest pay grade." *Middendorf,* 425 U.S. at 31, 96 S.Ct. 1281; *see also* Art. 19, UCMJ, 10 U.S.C. § 819. **Summary courts-martial** "occup[y] a position between informal nonjudicial disposition under Art. 15 and the courtroom-type procedure of the general and spe-

cial courts-martial." *Middendorf*, 425 U.S. at 32, 96 S.Ct. 1281. "It is an informal proceeding conducted by a single commissioned officer with jurisdiction only over non-commissioned officers and other enlisted personnel." *Id.; see also* Art. 20, UCMJ, 10 U.S.C. § 820. "The presiding officer acts as judge, fact finder, prosecutor, and defense counsel." *Middendorf*, 425 U.S. at 32, 96 S.Ct. 1281. "**Article 15 punishment**, conducted personally by the accused's commanding officer, is an *administrative method* of dealing with the most minor offenses." *Id.* at 31–32, 96 S.Ct. 1281 (emphasis added).[3]

In *Middendorf*, military personnel brought an action challenging the authority of the military to try them and sentence them to confinement after a summary court-martial without providing the assistance of counsel. The Court held that the fact that confinement can be imposed in a military environment after a summary court-martial did not make it a "criminal prosecution" and concluded that the summary court-martial is not a "criminal prosecution" for purposes of the fifth or sixth amendment right to counsel. *Id.* at 42, 48, 96 S.Ct. 1281. The Supreme Court stated that the fact that a proceeding may result in the loss of liberty does not necessarily mean the proceeding is a criminal prosecution. *Id.* at 37, 96 S.Ct. 1281.

An Article 15 nonjudicial proceeding is less judicial in nature than a summary court-martial. In addition, the permissible range of punishments resulting from an Article 15 proceeding is more circumscribed. Therefore, logic dictates that the less serious Article 15 nonjudicial proceeding cannot amount to criminal prosecution. Accordingly, the punishment that results from an Article 15

proceeding cannot amount to criminal conviction for the purposes of statutory analysis.

In *Middendorf*, even the dissent, which would have held that a summary court-martial is a criminal proceeding, agreed that the less serious Article 15 nonjudicial punishment is *not* a criminal conviction for the purposes of the fifth or sixth amendment. *Id.* at 58, 96 S.Ct. 1281 (Marshall, J., dissenting). The dissenters noted that an Article 15 nonjudicial punishment can be speedily imposed by a commander and does not carry with it the stigma of a criminal conviction. *Id.* at 58–59, 96 S.Ct. 1281.[4]

Numerous federal cases have held that an Article 15 nonjudicial proceeding is not a criminal prosecution. *See e.g., United States v. Marshall,* 45 M.J. 268, 271 (1996); *Varn v. United States,* 13 Cl.Ct. 391, 396 (1987); *Dumas v. United States,* 223 Ct.Cl. 465, 620 F.2d 247, 253 (1980) ("Article 15 proceedings clearly are not criminal prosecutions within the meaning of the rights plaintiffs claim under [the fifth and sixth] amendment[s]"); *Bowes v. United States,* 227 Ct.Cl. 166, 645 F.2d 961 (1981); *Cole v. United States,* 228 Ct.Cl. 890 (1981); *Cochran v. United States,* 1 Cl.Ct. 759, 764 (1983), *aff'd,* 732 F.2d 168 (1984); *Cappella v. United States,* 224 Ct.Cl. 162, 624 F.2d 976, 980 (1980). No cases have been cited or located which hold to the contrary. Moreover, even Myers concedes that as a matter of federal law, punishment under Article 15 is not considered to be a criminal prosecution.

The legislative history accompanying 10 U.S.C. § 815 states that Article 15 nonjudicial punishment is non-criminal in character. The legislative history explains the purpose of the 1962 amendments to Article 15:

---

**3.** In *Middendorf,* the United States Supreme Court noted that:

The maximum punishments which may be imposed under Art. 15 are: 30 days' correctional custody; 60 days' restriction to specified limits; 45 days' extra duties; forfeiture of one-half of one month's pay per month for two months; detention of one-half of one month's pay per month for three months; reduction in grade. Enlisted members attached to or embarked on a vessel may be sentenced to three days' confinement on bread and water or diminished rations. Correctional custody is not necessarily the same as confinement. It is intended to

be served in a way which allows normal performance of duty, together with intensive counseling. Persons serving correctional custody, however, may be confined. Art. 15(b). *Middendorf,* 425 U.S. at 31, 96 S.Ct. 1281, n. 9 (citations omitted).

**4.** In his dissenting opinion in *Middendorf,* Justice Marshall wrote, "[o]ne of the central distinctions between Article 15 nonjudicial punishment and a summary court-martial conviction is that the latter is regarded as a criminal conviction." 425 U.S. at 58, 96 S.Ct. 1281.

The purpose of the proposed legislation is to amend article 15 of the Uniform Code of Military Justice to give increased authority to designated commanders in the Armed Forces to impose nonjudicial punishment. *Such increased authority will enable them to deal with minor disciplinary problems and offenses without resort to trial by court-martial.*

1962 U.S.C.C.A.N. 2379, 2380 (emphasis added).

The history further explains:

*Under existing law, article 15 of the Uniform Code of Military Justice provides a means whereby military commanders deal with minor infractions of discipline without resorting to criminal law processes.* Under this article commanding officers can impose specified limited punishments for minor offenses and infractions of discipline. *This punishment is referred to as "nonjudicial" punishment. Since the punishment is nonjudicial, it is not considered as a conviction of a crime and in this sense has no connection with the military court-martial system.* ... It has been acknowledged over a long period that military commanders should have the authority to impose nonjudicial punishment as an essential part of their responsibilities to preserve discipline and maintain an effective armed force.

*Id.* at 2380–81 (emphases added). The legislative history also emphasizes Congress's intent to make Article 15 a non-criminal proceeding for the protection of service personnel:

The Department of Defense has stated that problems adversely affecting morale and discipline have been created in the Armed Forces because of the inadequate powers of commanding officers to deal with minor behavioral infractions without resorting to the processes of the military court-martial system. The limited non-judicial punishment authority has proved unsatisfactory to commanders in the field. The alternative solution has been to impose a trial by summary or special court-martial. In most cases, a court-martial results in a serious impairment of the services of an officer or enlisted man. Such a

conviction stigmatizes a person with a criminal conviction on his record, which not only remains throughout his military career, but follows him into civilian life. It may well interfere with his civilian job opportunities, as for example, when he is required to show on a questionnaire whether he has ever been convicted, and it may adversely reflect on him if he is involved in difficulty with civilian law-enforcement agencies. *The bill, by providing increased authority for nonjudicial punishment, will enable commanders to deal promptly and efficiently with problems of discipline. At the same time, the increased nonjudicial authority should permit the services to reduce substantially the number of court-martials for minor offenses, which result in stigmatizing and impairing the efficiency and morale of the person concerned.*

*Id.* at 2381–81 (emphasis added).

In light of the foregoing, it is clear that an Article 15 military proceeding for nonjudicial punishment does not amount to a "criminal prosecution" for purposes of HRS §§ 701–110(3) and 701–112(1). Article 15's legislative history demonstrates that Congress did not consider nonjudicial punishment to be a conviction of a crime. Furthermore, federal courts have construed such proceedings to be non-criminal in nature. Accordingly, state prosecution of Myers for the same offense is not barred by our double jeopardy statutory scheme.

Contrary to Myers's claim, the actual impact of an Article 15 punishment is not similar to a criminal conviction. Myers argues that because an Article 15 proceeding threatens "confinement," which he equates with imprisonment, it follows that such proceeding is a criminal prosecution for the purpose of double jeopardy analysis. To support his argument, Myers heavily relies on *State v. Ivie,* 136 Wash.2d 173, 961 P.2d 941 (1998), in which the Washington Supreme Court held that, under the state's statutory scheme, prosecution by the state was barred following the imposition of nonjudicial military punishment.

In *Ivie,* two active duty members of the United States Navy raised a statutory chal-

lenge to their state DUI prosecutions following their punishment under UCMJ Article 15. *Ivie* interpreted a Washington statute, RCW 10.43.040, which read at the time:

> Whenever upon the trial of any person for a crime, ... the defendant has already been ... convicted upon the merits, *upon a criminal prosecution* under the laws of [another] state or country, founded upon the act or omission with respect to which he is upon trial, such former ... conviction is a sufficient defense.

*Id.* at 943 (emphasis in original).[5]

In reaching its holding, the *Ivie* court began its analysis by looking at Black's definition of "criminal prosecution." *Id.* The court stated:

> "Criminal prosecution" is not defined in the statute. *Black's* define prosecution as "[a] criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with a crime." The meaning of "criminal prosecution" must further be determined from the statutory context in which it is used. RCW 10.43.040 is a double jeopardy statute and "criminal prosecution" is used therein to mean a proceeding to constitute jeopardy under double jeopardy jurisprudence....
>
> ....
>
> ... Referencing double jeopardy jurisprudence, we note the clause prohibits "multiple punishments for the same offense." Thus the double jeopardy aspects of our statute focuses on whether the prior proceeding amounts to "punishment."
>
> Meshing the dictionary definition of "criminal prosecution" with its double jeopardy basis we understand "criminal prosecution" to include a proceeding instituted under the rules of law to determine the guilt or innocence of a person accused of a criminal act where such proceeding threat-

ens punishment under double jeopardy jurisprudence.

*Id.* at 944–45 (citation omitted and brackets in the original).

We disagree with the majority in *Ivie*. In our view, the analysis in the dissent is more compelling. In Justice Guy's dissenting opinion in *Ivie*, he implied that congressional intent and federal case law should be our guide in determining whether Article 15 nonjudicial punishment amounts to a criminal conviction for the purpose of statutory analysis. *Id.* at 949 (Guy, J., dissenting). As discussed above, the legislative history of Article 15 clearly shows that Congress never intended nonjudicial proceedings to be criminal prosecutions. *See* 1962 U.S.C.C.A.N. at 2380. Likewise, the United States Supreme Court has held in *Middendorf* that the fact that a proceeding may result in confinement or loss of liberty does not necessarily mean the proceeding is a criminal prosecution. 425 U.S. at 37, 96 S.Ct. 1281.

For the foregoing reasons, we hold that the district court did not err by denying Myers's motion to dismiss the DUI charge. We further hold that, by its terms, a UCMJ Article 15 nonjudicial proceeding does not amount to a criminal prosecution, and thus, cannot result in a "judgment of conviction" pursuant to HRS § 701–110(3). Accordingly, none of the circumstances barring state prosecution outlined in HRS § 701–112 was met.

## IV. CONCLUSION

The district court's judgment is hereby affirmed.

---

**5.** This statute has been subsequently amended in 1999 to reject the holding in *Ivie. See State v. Moses*, 104 Wash.App. 153, 15 P.3d 1058, 1060 n. 10 (2001), *aff'd*, 145 Wash.2d 370, 37 P.3d 1216 (2002). That amendment provided:
> Nothing in this section affects or prevents a prosecution in a court of this state of any

> person who has received administrative or nonjudicial punishment, civilian or military, in another state or country based upon the same act or omission.

In *Moses*, the Washington Court of Appeals noted that the amendment was added in response to *Ivie. Moses*, 15 P.3d at 1060 n. 10.