**UNITED STATES of America,**
**Appellant,**

v.

**Tyler W. TROGDEN, Appellee.**

**Criminal No. 4:06cr132.**

United States District Court,
E.D. Virginia,
Newport News Division.

March 1, 2007.

Tyler W. Trogden, Pro se.

David Whitman, Office of the Post Judge Advocate Headquarters, Fort Monroe, Fort Monroe, VA, for Appellant.

## OPINION AND REMAND ORDER

REBECCA BEACH SMITH, District Judge.

This case is before the court on the government's appeal of a magistrate judge's dismissal of a criminal information,[1] which charged defendant with the misdemeanor of driving under the influence of alcohol.[1] For the reasons stated below, the magistrate judge's decision is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

1. The government filed this appeal pursuant to Rule 58(g)(2)(A) of the Federal Rules of Criminal Procedure, which applies to misdemeanors and provides that "[e]ither party may appeal an order of a magistrate judge to a district judge within 10 days of its entry if a district judge's order could similarly be appealed." FED.R.CRIM.P. 58(g)(2)(A). Appeals from a district judge's order by the government are allowed when a district judge dismisses a criminal information. See 18 U.S.C. § 3731. Therefore, this dismissal is appealable, and the instant appeal is properly before the court.

2. The facts of this case were not in dispute at the hearing. To summarize, on August 26,

## I. FACTS AND PROCEDURAL HISTORY

On August 26, 2006, at approximately 5:15 p.m., defendant Tyler E. Trogden, an enlisted member of the United States Navy, was cited by military police for the misdemeanor of driving under the influence of alcohol at Fort Monroe, Virginia. Two days later, on August 28, 2006, defendant received nonjudicial punishment ("NJP"), pursuant to Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815, from his commanding officer aboard the U.S.S. HARRY S. TRUMAN. Defendant received the following NJP:(1) reduction in rank of one grade from E–4 to E–3; (2) forfeiture of one-half of his monthly pay for two months; (3) restriction to his unit for 45 days; and (4) extra duties for 45 days.

On September 6, 2006, the government filed a criminal information, which charged defendant with "knowingly and unlawfully operat[ing] a motor vehicle while under the influence of alcohol," in violation of 18 U.S.C. §§ 7, 13 (assimilating VA.CODE ANN. § 18.2–266). On October 11, 2006, defendant appeared pro se before a magistrate judge, where he consented to having his case heard and waived his right to a jury trial. Defendant entered a plea of guilty, and the government made its proffer of evidence to the court.[2] After this proffer,

2006, Sergeant Conrad Ramirez was patrolling Stillwell Road on foot, which was temporarily designated as a one-way street due to traffic from an on-post event. Sergeant Ramirez observed defendant driving a motor vehicle the wrong way on this street and flagged him down to inform him of the new traffic pattern. After stopping defendant, however, Sergeant Ramirez detected a strong odor of alcohol. Suspecting that defendant was intoxicated, Sergeant Ramirez called for assistance. Officer Jimmie Mack responded and questioned defendant. Because defendant had recently injured his knee, Officer Mack did not ask defendant to perform field sobriety tests. Instead, Officer Mack escorted defendant to the Provost Marshal's Office,

the government presented defendant's NJP to the court, as it had agreed to recommend a minimum sentence. It was at this time that the court, on its own initiative, dismissed the criminal information against defendant. In doing so, the magistrate judge stated

> [t]here goes the case, counsel.... [I]t's real simple.... [N]onjudicial punishment hurts just like judicial punishment for a young man who's in the Navy who's suffered—who has been charged with driving under the influence and has had the Navy administer that kind of punishment, why should we be imposing on him double the penalty that the person gets imposed on him? I think it is extraordinarily bad policy.... I'm simply not willing to penalize the young man twice for exactly the same offense, because he has no control over the Article 15. I have control over this.... [I]n fairness, I'm not going to convict him of this offense.... [H]aving had an Article 15, you have had imposed upon you significant punishment and I'm not going to have another form of punishment imposed upon you.

Tr. at 9–12.[3] The magistrate judge thus concluded, without citing any authority, that the Double Jeopardy Clause prevented the government from criminally prose-

cuting defendant for driving under the influence of alcohol after he had received NJP for the same offense.

On October 18, 2006, the government timely filed its notice of appeal pursuant to Rule 58(g)(2)(A).[4] On November 22, 2006, the government filed its memorandum in support of its appeal. The government argues that the imposition of NJP does not bar a subsequent criminal prosecution for the same offense. Defendant, who is still proceeding *pro se*, did not file a memorandum in response to the government's appeal. Having reviewed the full transcript and record of the proceeding before the magistrate judge and the government's submission on appeal, the court will now resolve the legal question before it.[5]

## II. ANALYSIS

The sole issue on appeal is whether the imposition of NJP under Article 15 amounts to criminal punishment, triggering the protections of the Double Jeopardy Clause of the Fifth Amendment. Rule 58(g)(2)(D) provides that "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." FED.R.CRIM.P. 58(g)(2)(D). Accordingly, issues of law are reviewed de *novo*. *United States v. Bur-*

---

where defendant consented to a breath test. Sergeant Alan Wagar, who is licensed by the Virginia Department of Forensic Science to operate an Intoxilyzer 5000 machine, administered the test after complying with all pretest procedures. Defendant's breath sample showed that he had 0.12 grams of alcohol per 210 liters of breath, which is above the legal limit.

3. In addition, when presented with the argument by the government that Congress did not intend for Article 15 punishment to bar subsequent criminal prosecution for the same offense, the magistrate judge stated, "Do you really think that Congress understands anything that they set up when it comes to law enforcement? ... I have given up hope....

Look at the sentencing guidelines, at the way the sentencing guidelines have been handled and what Congress did." Tr. at 11–12.

4. *See supra* note 1.

5. This appeal only involves a legal issue, and a hearing on this matter is not needed; the record is clearly sufficient to resolve this legal question. Moreover, defendant has informed the court, by letter filed on February 8, 2007, that the Navy has transferred him to Bangor, Washington, to attend welding school. As a result, defendant has asked that the court resolve the legal question presented in this appeal without requiring him to return to Virginia.

*sey*, 416 F.3d 301, 305–06 (4th Cir.2005); *United States v. Imngren*, 98 F.3d 811, 813 (4th Cir.1996).

■ The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. As applicable in this case, the clause prohibits multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The Supreme Court, however, has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98–99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 87 L.Ed. 443 (1943)). Instead, "[t]he Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Id.* at 99, 118 S.Ct. 488 (citing *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938)); *see Hess*, 317 U.S. at 549, 63 S.Ct. 379 (stating that only criminal punishment "subject[s] the defendant to 'jeopardy' within the constitutional meaning"). Thus, rather than making the existence of mere punishment determinative, the Supreme Court in *Hudson* focused on distilling the criminal or civil nature of the punishment in deciding whether the protections of the Double Jeopardy Clause are invoked. *See Brewer v. Kimel*, 256 F.3d 222, 225 (4th Cir.2001) (citing *Hudson*, 522 U.S. at 100, 118 S.Ct. 488).

■ Recognizing that civil remedies occasionally rise to the level of criminal punishment, the Supreme Court has set forth a two-part test to guide lower courts in making this determination. *See Nivens v. Gilchrist*, 319 F.3d 151, 158 n. 10 (4th Cir.2003); *Brewer*, 256 F.3d at 225–26. First, as a matter of statutory construction, courts must examine whether Congress " 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference' " for the sanction to be criminal or civil. *Hudson*, 522 U.S. at 99, 118 S.Ct. 488 (quoting *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). In order to determine the criminal or civil character of a particular sanction, the court must begin by analyzing the statute's text and legislative history. *Seling v. Young*, 531 U.S. 250, 262, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). Second, even in cases where Congress has indicated an intention to establish only a civil penalty, the court must inquire further as to "whether the statutory scheme was so punitive either in purpose or effect, as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 99, 118 S.Ct. 488 (internal quotation marks and citations omitted). To aid in making this determination, the Supreme Court used the seven-factor test announced in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Hudson*, 522 U.S. at 99–100, 118 S.Ct. 488. This seven-factor test, which is not exhaustive and should be applied flexibly, requires that this court consider

(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter* "; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Id.* The Supreme Court stated that "[i]t is important to note, however, that these factors must be considered in relation to the statute on its face and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at 100, 118 S.Ct. 488 (internal quotation marks and citations omitted). Accordingly, this court will first consider Congress's intent in enacting Article 15 and then apply the seven factors of *Hudson.*[6]

## A. Congress Did Not Intend for NJP to be Criminal in Nature

■ The first part of the *Hudson* test— the assessment of congressional intent— requires that the court examine the text and legislative history of Article 15, as well as its discussion in Supreme Court, other federal court, and state court case law. Although by no means dispositive, the title of Article 15, "Commanding officer's non-judicial punishment," facially labels punishment under this statute as "non-judicial" and thus noncriminal. *See* 10 U.S.C. § 815; *Cochran v. United States,* 1 Cl.Ct. 759, 764 (1983). Courts have noted that this title reflects the legislative intent of Congress to distinguish NJP from the military's criminal system. *See, e.g., United States v. Gammons,* 51 M.J. 169, 177 (U.S. Armed Forces 1999). Furthermore, the text of Article 15 provides that "any commanding officer may, in addition to or in lieu of admonition or reprimand, impose one or more of the following *disciplinary* punishments for minor offenses without

the intervention of a court-martial." 10 U.S.C. § 815(b) (emphasis added). This language also indicates that Congress considered NJP to be disciplinary, not criminal, in nature.

In addition to the statute itself, Part V of the Manual for Courts–Martial, which implements the provisions of Article 15 by Executive Order, "describes NJP as a 'disciplinary measure' more serious than lesser administrative measures 'but less serious than trial by court-martial.'" *United States v. Burns,* 29 F.Supp.2d 318, 322 (E.D.Va.1998) (quoting MANUAL FOR COURTS-MARTIAL, United States, Part V, para. 1b). This manual states that "NJP provides military commanders with 'an essential and prompt means of maintaining good order and discipline and also promotes positive behavior changes in service members without the stigma of a court-martial conviction.'" *Id.* (quoting MANUAL FOR COURTS-MARTIAL, United States, Part V, para. 1c). Further indicating its non-criminal nature, NJP proceedings do not follow rules of evidence, guarantee certain rights to the accused, or require a finding of guilt beyond a reasonable doubt. *See id.* (citing MANUAL FOR COURTS-MARTIAL, United States, Part V, paras. 4c(1)(B), (3)). The provisions of this manual refer to NJP as administrative discipline and thus distinguish NJP from criminal prosecutions.

The legislative history accompanying the 1962 amendments to Article 15 also firmly establishes that NJP is noncriminal in character. As noted in Senate Report

---

**6.** In 1998, this court considered a case almost identical to the instant appeal and applied the *Hudson* framework of analysis. *See United States v. Burns,* 29 F.Supp.2d 318 (E.D.Va. 1998). In *Burns,* this court determined that the Double Jeopardy Clause did not bar a subsequent prosecution for larceny in federal court, even though defendant had previously received NJP for the same offense. *Id.* at 319–20. After applying both parts of *Hudson,*

this court determined that Congress did not intend for NJP to be considered criminal and that the form and effect of NJP did not render it criminally punitive. *Id.* at 321–24, 29 F.Supp.2d 318. Thus, there is direct support within this district that double jeopardy is not violated in this type of circumstance. Nevertheless, this court will consider each part of the *Hudson* test in its examination of the instant appeal.

1911, the Committee on Armed Services provides that

> [t]he purpose of the proposed legislation is to amend article 15 of the Uniform Code of Military Justice to give increased authority to designated commanders in the Armed Forces to impose nonjudicial punishment. Such increased authority will enable them to deal with minor disciplinary problems and offenses without resort to trial by court-martial.

S.REP. No. 87–1911 (1962), *as reprinted in* 1962 U.S.C.C.A.N. 2379, 2380. Furthermore, this report importantly indicates that "[s]ince the punishment is nonjudicial, *it is not considered as a conviction of a crime* and in this sense has no connection with the military court-martial system." *Id.* (emphasis added). This legislative history goes on to explain that Article 15 "provides a means whereby military commanders may impose nonjudicial punishment for minor infractions of discipline" without resort to the military's criminal system. *Id.* at 2380–81. Many courts have referred to this legislative history in holding that NJP is not criminal punishment. *See, e.g., Cochran v. United States,* 1 Cl.Ct. 759, 765 (1983); *Dumas v. United States,* 223 Ct.Cl. 465, 620 F.2d 247, 251 (1980); *State v. Myers,* 100 Hawai'i 132, 134–36, 58 P.3d 643, 644–47 (2002). This legislative history clearly indicates that Congress intended for NJP to be noncriminal in nature.

Finally, Supreme Court, other federal court, and state court precedent support the finding that NJP is not criminal. The Supreme Court has expressly stated that "Article 15 punishment, conducted personally by an accused's commanding officer, is an *administrative method* of dealing with the most minor offenses." *Middendorf v. Henry,* 425 U.S. 25, 31–32, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) (emphasis added); *see United States v. Gammons,* 51 M.J. 169, 177 (U.S. Armed Forces 1999) (con-

firming this Supreme Court precedent in stating that "[m]ost punishments that may be imposed in a NJP proceeding affect the noncriminal field of military personnel administration"). Lower courts have further held that NJP is a nonadversarial proceeding that is regarded as noncriminal in nature. *Fairchild v. Lehman,* 814 F.2d 1555, 1558 (Fed.Cir.1987); *see Wales v. United States,* 14 Cl.Ct. 580, 587 (1988); *Cochran,* 1 Cl.Ct. at 764, 767; *Dumas,* 620 F.2d at 251; *Gammons,* 51 M.J. at 174; *United States v. Marshall,* 45 M.J. 268, 271 (U.S. Armed Forces 1996); *Dobzynski v. Green,* 16 M.J. 84, 85–86 (U.S. Armed Forces 1983); *Myers,* 100 Hawai'i at 135, 58 P.3d at 646. Accordingly, in light of Article 15's text, implementing manual, legislative history, and evaluation in case law, this court finds that Congress did not intend for NJP to be considered as criminal punishment for Double Jeopardy purposes, and this congressional intent is "entitled to considerable deference." *SEC v. Palmisano,* 135 F.3d 860, 864 (2d Cir.1998).

**B.  Analysis of *Hudson's* Seven–Factor Test Does Not Render NJP as Criminally Punitive**

Even though Congress has indicated an intention to provide for noncriminal punishment under Article 15, "double jeopardy analysis requires that the Court consider whether the form and effect of a NJP sanction renders it criminal in fact." *United States v. Burns,* 29 F.Supp.2d 318, 322 (E.D.Va.1998). To make this determination, this court will consider the seven factors of *Hudson,* which were previously listed above. *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

■  First, the court must consider whether NJP involves an affirmative disability or restraint. *Id.* In this case, the NJP imposed against defendant includes temporary prohibition from certain activi-

ties, extra duties, reduction in rank, and forfeiture of some pay for an extremely limited time period. This NJP does not approach the " 'infamous punishment' of imprisonment." *Id.* at 104, 118 S.Ct. 488 (quoting *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)); *Burns,* 29 F.Supp.2d at 319, 323 (concluding that NJP similar to the instant case, including prohibition from certain activities, extra duties, reduction of one pay grade, and forfeiture of one-half of one month's pay, did not involve an affirmative disability or restraint). Thus, this factor weighs in favor of the government.

Second, the court must evaluate whether NJP has historically been regarded as a criminal punishment. *See Hudson,* 522 U.S. at 99, 118 S.Ct. 488. This court has previously held that "while NJP has been historically regarded as a punishment, it was not historically regarded as a criminal punishment." *Burns,* 29 F.Supp.2d at 323. As a result, this factor also weighs in favor of the government.

Third, the court must ask whether NJP comes into play only upon a finding of scienter. *See Hudson,* 522 U.S. at 99, 118 S.Ct. 488. In this case, it is clear that NJP does not come into play only on such a finding. *See Burns,* 29 F.Supp.2d at 323. Under Article 15, a commanding officer may impose disciplinary punishment for minor offenses without the intervention of a court-martial. *See id.* (citing 10 U.S.C. § 815(b)). Under this statute, the commanding officer never has to make any inquiry into the violator's state of mind, and thus this factor further supports the government's argument.

Fourth, the court considers whether NJP's operation will promote the traditional aims of punishment-retribution and deterrence. *See Hudson,* 522 U.S. at 99, 118 S.Ct. 488. NJP, by its name, punishes violators, and this factor weighs in favor of defendant. NJP also undoubtedly serves as a deterrent; however, the Supreme Court has stated that "all civil penalties have some deterrent effect" and that the "mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." *Id.* at 102, 105, 118 S.Ct. 488 (internal quotation marks omitted). This court notes that NJP does serve an important administrative purpose, as it is a method of dealing with offenses "to promote good order and discipline within the military." *Burns,* 29 F.Supp.2d at 323; *see supra* Part II.A. To hold that the mere presence of a deterrent purpose renders a sanction criminal would significantly undermine the ability of the government to maintain discipline in the military. *Burns,* 29 F.Supp.2d at 323. Therefore, although this factor is the strongest for defendant, it only slightly favors defendant.

Fifth, the court asks whether the behavior to which NJP applies is already a crime. *See Hudson,* 522 U.S. at 99, 118 S.Ct. 488. As applied to this case, the conduct for which NJP is imposed, driving under the influence of alcohol, is also criminal. However, the Supreme Court has previously held that this fact is insufficient to render monetary penalties and even occupational disbarment as criminally punitive, particularly in the context of double jeopardy. *Id.* at 105, 118 S.Ct. 488 (citing *United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)). It follows that this fact is also insufficient to render the NJP at issue—reduction in rank, forfeiture of pay, restriction to unit, and extra duties—as criminally punitive, and this factor is considered neutral.

Sixth, the court considers "whether an alternative purpose to which [NJP] may rationally be connected is assignable for it." *Id.* at 99, 118 S.Ct. 488. It has been stated that this criterion inquires into "whether an asserted 'sanction' may be reasonably regarded as having a purpose

other than punishment." *Myrie v. Comm'r, N.J. Dep't of Corrs.*, 267 F.3d 251, 261 (3d Cir.2001). In this case, NJP is certainly rationally connected to the alternative purpose of maintaining order in the military, which is different from punishment. *See supra* Part II.A. The legislative history of Article 15 specifically states that "[t]he bill, by providing increased authority for nonjudicial punishment, will enable commanders to deal promptly and efficiently with problems of discipline." S.REP. No. 87–1911 (1962), *as reprinted in* 1962 U.S.C.C.A.N. 2379, 2381. Furthermore, courts have noted that "[d]iscipline, which entails the control of armed forces through prompt obedience of superior orders, is an integral component of successful military observations." *United States v. Gammons*, 51 M.J. 169, 178 (U.S. Armed Forces 1999). The need to maintain order and discipline is thus a legitimate, nonpunitive purpose of NJP, even if it sometimes requires that military officials take actions of a punitive character. Thus, this factor weighs in favor of the government.

Seventh, the court asks whether NJP appears excessive in relation to its alternative purpose of maintaining order in the military. *See Hudson*, 522 U.S. at 99–100, 118 S.Ct. 488. In administering NJP, the commanding officers have discretion in de-ciding what range of sanctions to impose.[7] *See Gammons*, 51 M.J. at 173. Given the alternative purpose of NJP and the "relatively modest" and time-restricted penalties imposed under Article 15 in this case, the court finds that the NJP received here was not at all excessive in light of the fact that defendant was driving under the influence of alcohol on a military reservation. *See id.* at 178. Thus, this factor also supports the government.

In conclusion, the court must consider these factors in relation to the text of Article 15, and as the Supreme Court has provided, only the *clearest proof* will override legislative intent and make an otherwise noncriminal penalty criminal. *Hudson*, 522 U.S. at 100, 118 S.Ct. 488. As this court has held, Article 15 on its face does not constitute criminal punishment. *See supra* Part II.A. From the court's analysis of the seven *Hudson* factors, the court also finds that there is no clear proof suggesting that NJP is so punitive in form and effect that it is rendered criminal. Accordingly, as NJP does not constitute criminal punishment, this court holds that the Double Jeopardy Clause does not prevent the government from criminally prosecuting defendant for driving under the influence of alcohol, even after defendant received NJP under Article 15 from his commanding officer.[8]

---

7. Under Article 15, the maximum punishment that may be imposed by a commanding officer includes: (1) 30 days' correctional custody; (2) 60 days' restriction to specified limits; (3) 45 days' extra duties; (4) forfeiture of one-half of one month's pay per month for two months; (5) detention of one-half of one month's pay per month for three months; and (6) reduction in grade. *See* 10 U.S.C. § 815(b); *Middendorf v. Henry*, 425 U.S. 25, 32 n. 9, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). It should be noted, however, that "[c]orrectional custody is not necessarily the same as confinement. It is intended to be served in a way which allows normal performance of duty, together with intensive counseling."

*Middendorf*, 425 U.S. at 32 n. 9, 96 S.Ct. 1281.

8. Notably, the Second Circuit has previously considered a similar case. In *United States v. McAllister*, a defendant, who was an enlisted man in the United States Army, was cited by military police for driving under the influence of alcohol. 119 F.3d 198, 199 (2d Cir.1997). The government subsequently filed a criminal information against defendant for this offense, but before any criminal proceedings occurred, his military commander imposed the following punishment: (1) suspension of on-base driving privileges pending criminal proceedings; (2) general letter of reprimand; (3) reduction in rank from corporal to specialist;

## III. CONCLUSION

The decision of the magistrate judge is **REVERSED,** and the case is **REMANDED** for further proceedings consistent with this opinion.[9] The Clerk shall forward a copy of this Opinion and Remand Order to the Assistant United States Attorney/appellant and to the defendant/appellee.

**IT IS SO ORDERED.**

and (4) certificate of bar to re-enlistment. *Id.* After receiving this punishment, defendant moved to dismiss the criminal information on double jeopardy grounds. *Id.* In considering this case on appeal, the Second Circuit held that

where the government, acting as employer of members of the armed forces, disciplines a member by using measures that are available to private employers, and are not uniquely within government's power to punish for criminal wrongdoing, such discipline ordinarily will not constitute "punishment" within the meaning of the Double Jeopardy Clause.

*Id.* at 201. In so holding, the court recognized a distinction between the government acting as sovereign and the government acting as employer, and stated that

[t]his distinction avoids the patently "absurd result[s]," that would arise if government employees accused of serious misconduct could escape trial and punishment because they had been suspended or relieved of responsibilities or privileges pending adjudication of their guilt, or if the government declined to sanction an employee whose conduct was serious enough to warrant prosecution for fear of jeopardizing the prosecution.

*Id.* (internal citation omitted). While this case is not directly analogous to the instant action and the Second Circuit made a finding on different grounds, it does provide further support and an alternative rationale for concluding that the Double Jeopardy Clause does not prevent the government from criminally prosecuting defendant in the instant case.

9. The court is also of the opinion that the case should be heard on remand by a different magistrate judge, due to the particular circumstances set forth herein. *See supra* pp. 565–66 and notes 2 & 3. Specifically, after defendant had entered a plea of guilty to the offense, the magistrate judge *sua sponte,* contrary to settled law and the agreed facts supporting the plea, refused to find defendant guilty or to impose any punishment. *See id.* This scenario of record remains in the case; and, on remand, defendant should not be treated or punished differently from other defendants similarly situated, nor should there be the possibility. of the appearance of such.