**UNITED STATES of America**

v.

**Anthony M. VOLPE.**

**No. 97–CR–133.**

United States District Court, N.D. New York.

Dec. 1, 1997.

Thomas J. Maroney, U.S. Attorney, U.S. Army Judge Advocate General's Corps, Office of the Staff Judge Advocate (Bridget M. Gillespie, of counsel), Fort Drum, NY, for U.S.

Andrew Kinnie, Watertown, NY, for Anthony M. Volpe.

## DECISION and ORDER

SCANLON, United States Magistrate Judge.

Currently before this Court is defendant's motion to dismiss the charge of driving while intoxicated pending against him. The prosecution opposes the motion.

## BACKGROUND

On April 20, 1997, defendant, a soldier in the United States Army ("Army"), was driving on North Memorial Avenue in Fort Drum, a federal military installation that is located in Jefferson County, New York, and within the special territorial jurisdiction of the United States. Defendant, the prosecution asserts, was stopped after the vehicle he was driving crossed over the median. The officer who stopped defendant allegedly detected the odor of alcohol on his breath. Having failed a field sobriety test, according to the prosecution, defendant was transported to the facility's Provost Marshall's Office, where he registered a .12% BAC after having taken a breathalyzer test. He was charged with driving while intoxicated under 18 U.S.C. § 13 and New York Vehicle and Traffic Law §§ 1192(2), (3), as well as failure to maintain a single lane of travel and aggravated unlicensed operation.

Following his arrest defendant maintains that his "Single Soldier Initiative" ("SSI") privileges were canceled, though the prosecution claims that the privileges were suspended for one month only. As a result of the loss of privileges, defendant was forbidden from leaving post without prior written approval of his company commander and was also limited as to visitors, dress code and other issues even during off duty hours.

[Defendant also claims that as a result of his arrest his on-base driving privileges were suspended for one year; he was given a letter of reprimand; he was "flagged"— which means that no positive personnel action may be made on his behalf pending the outcome of his case; and his previously approved promotion in rank was canceled. Concomitant with the loss of his promotion, defendant contends, was his loss of an increase in pay and responsibilities.][1] Defendant contends that the Army's actions violate the United States Constitution's Double Jeopardy Clause, wherefore he seeks a dismissal of the charges pending against him.

In a Decision and Order dated July 24, 1997 Magistrate Judge Daniel Scanlon Jr., held defendant's motion to dismiss in abeyance pending filing of supplementary briefs by both parties on the issue of how his loss of "SSI" privileges affected his rights vis-a-vis the Double Jeopardy Clause.

### DISCUSSION

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Once jeopardy attaches, Double Jeopardy clause protects criminal defendant in three ways: (1) it protects against second prosecution for same offense after acquittal; (2) it protects against second prosecution for same offense after conviction; (3) and it protects against multiple punishments for same offense. U.S. CONST. amend. V; *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The question presented in this instant matter is whether in light of the Army's actions, the Court's trying of defendant would constitute a multiple punishment for the same offense.

In examining the nature of Double Jeopardy in the military context, the Second Circuit recently held:

> [W]here the government, acting as employer of members of the armed forces, disciplines a member by using measures that

are available to private employers, and are not uniquely within the government's power to punish for criminal wrongdoing, such discipline ordinarily will not constitute "punishment" within the meaning of the Double Jeopardy Clause.

*United States v. McAllister*, 119 F.3d 198, 201 (2d Cir.1997).

The facts in *McAllister* closely mirror those in this matter. McAllister was a soldier based in Fort Drum and he was charged pursuant to 18 U.S.C. § 13 with operating a motor vehicle while intoxicated. While the charges were pending, the Army imposed a series of administrative sanctions against him, which included a suspension of his on-base driving privileges pending the adjudication of his criminal charge. He also received a general letter of reprimand, a reduction in rank from corporal to specialist, and a bar to re-enlistment. The Second Circuit concluded that the actions taken by the Army against McAllister were "not the type of 'punishment' that triggers the protection of the Double Jeopardy Clause and bars further punishment." *Id.* at 200. It reasoned that these actions did not require the use of "sovereign power" nor did they "invoke the power of the state to punish in the manner of a sentence of imprisonment"; rather, the Court viewed the Army's actions as "measures ... regardless of whether they had any punitive intention, [that] were sanctions that a private employer could impose on an employee who has endangered safety by drunken driving on the employer's premises." *Id.*

Whether defendant's prosecution will offend the Double Jeopardy Clause, therefore, turns on whether the Army's disciplinary actions are within the ambit of those that a similarly situated private employer might enjoy. In light of *McAllister*, clearly the suspension of defendant's on-base driving privileges, letter of reprimand and administrative flagging do not constitute the type of punishment "intended in the sense by the Double Jeopardy Clause." *Id.* Furthermore, the cancellation of the promotion was dealt

---

1. These claims were dealt with in the Decision and Order of July 24, 1997 and are mentioned here merely to aid in the analysis of the remaining issue of suspension of SSI privileges.

with in the Decision and Order of July 24, 1997.

■ The suspension of defendant's "SSI" privileges, however, requires additional analysis by the Court. Though the Army obviously may revoke these privileges, the question presented is whether such a revocation runs afoul of the Double Jeopardy Clause when a soldier is not permitted to: leave post without prior written approval of his company commander; have visitors on off-duty hours; wear civilian clothes; or otherwise be free of interference in personal choice during non-working hours. It has not been the experience of the Court that a private employer may either, limit the travel of an employee to the employer's premises, or restrict his off-duty activities, as a means of sanctioning that employee. The prosecution argues that "[s]ervice in the military is a unique occupation with special job requirements. Military service requires availability 24 hours per day, seven days per week, 52 weeks per year." (dkt 10). While this may be true it does not necessarily follow that all actions taking place within the military context are parallel to actions taken by private employers.

The role of the military as an employer has been discussed often within the context of Federal Tort Litigation. In one such case, the D.C. Circuit drew a parallel between the military and company towns; "[w]ithin this multi-faceted relationship, the military imposes duties on personnel, not all of which are plausibly viewed as imposed by the government in its role as employer...". *Nelson v. U.S.*, 838 F.2d 1280, 1283 (D.C.Cir.1988). The 11th Circuit makes a similar argument, stating "while providing on-site residences for soldiers may foster camaraderie, encourage discipline and facilitate rapid mobilization in the event of a crisis, it does not draw the entire panoply of soldiers' on-base activities within the ambit of the employment relationship." *Bennett v. U.S.*, 102 F.3d 486, 492 (11th Cir.1996).

The Court finds the "company town" analysis useful in the present case because of the similarities between such towns and the military. It is the closest parallel that can be drawn between a private employer and the military as an employer, in that in both instances the employees both work and reside within the confines of the employer's property. Additionally, in such towns, as in the military, the employer has greater ability to restrict the actions of his employees than does a typical private employer. With the military, as with company towns historically, "the restrictions imposed ... are sometimes galling to the employees and may appear unreasonable to outsiders" *Marsh v. Alabama*, 326 U.S. 501, 513, 66 S.Ct. 276, 282, 90 L.Ed. 265 (1946) (*J. Reed dissenting*). When the employer surpasses irritation to its employees, and seeming unreasonableness to the public, however, and begins imposing restrictions that are prohibited by legal rules, the Courts must step in. *Id.*

The military in this instance has done nothing "illegal" per se by imposing the sanctions discussed herein. For this Court to subject the defendant to further punishment for the same crime however, would be violative of the Double Jeopardy clause of the Constitution. Although the prosecution is correct in its assertion that the military is a different entity from private employers in many ways, this does not mean that the military has a right to deny its employees their constitutional rights.

Private employers who chose to operate a company town historically had greater control over their employees than did other private employers. It did not follow however, that the company town employer could interfere with its employees' constitutional rights simply because they lived on the employer's property. *Marsh* at 508–509, 66 S.Ct. at 279–280. Just as employees in *Marsh* could not be denied their First Amendment rights, the defendant in this instance should not be denied the protection of the Double Jeopardy Clause simply because of the peculiarities of the employer for which he works.

Furthermore, the suspension of the "SSI" privileges was punishment under the *McAllister* analysis. As the defense correctly points out, sanctions imposed by the military are much more serious than those available to a private employer. Unlike in the private arena, soldiers may not simply quit their job if they do not like the sanctions imposed. To

do so would result not in civil sanctions, as may occur in the private sector, but serious repercussions, possibly even imprisonment. Thus given the extreme punishments that may be imposed by the military it is important to limit its ability to sanction its employees to strictly that which private employers have the rights to do. This Court is not aware of any caselaw that allows private employers to limit its employees' travels to the confines of the employment premises. Furthermore, the Court is also unaware of any cases allowing employers to limit who its employees can associate with, what they can wear, or what kind of linens they can use during off-duty hours. These are all personal choices, whose relationship to the military's purpose is highly attenuated to say the least. Such restrictions appear to be not those within the power of an employer, but conversely, to be "uniquely within the government's power to punish for criminal wrongdoing" *McAllister* at 201. Thus, the Double Jeopardy clause bars further prosecution of this case

Based on the briefs of both parties, the Court feels that the taking away of defendant's "SSI" privileges was not a sanction akin to the act of a private employer. Such punishment goes beyond the actions a private employer could legally take; and therefore, prosecution in this forum would violate the Double Jeopardy Clause. For this reason defendant's motion to dismiss is granted.

### CONCLUSION

WHEREFORE, based upon the foregoing, the defendant's motion to dismiss is granted; it is further,

ORDERED, that the clerk serve a copy of this Order upon the parties forthwith.

**SO ORDERED.**