**Jerrold E. RIVERA, Petitioner–Appellant,**

v.

**Margaret PUGH, Commissioner of Corrections, Respondent–Appellee.**

No. 98–35900.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1999.

Decided Nov. 15, 1999.

Michael S. Taggart, Assistant Federal Defender, Office of Federal Defender, Anchorage, Alaska, for the petitioner-appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, Alaska, for the respondent-appellee.

Before: BOOCHEVER, REAVLEY,[1] and TROTT, Circuit Judges.

BOOCHEVER, Circuit Judge:

Jerrold Rivera appeals from the district court's denial of his writ of habeas corpus. He argues that his criminal prosecution and punishment in Alaska for refusing a chemical breath test violated the Double Jeopardy Clause of the Fifth Amendment, because the state had already revoked his driver's license for the same behavior.

## FACTS AND PROCEDURE

Jerrold Rivera was arrested on December 18, 1994 in Ketchikan, Alaska, and was charged with driving while intoxicated, refusing to submit to a chemical breath test, and driving while his license was suspended or revoked. The State of Alaska Division of Motor Vehicles ("DMV") conducted an administrative hearing and, because Rivera had refused to take a chemical breath test, revoked Rivera's Alaska driver's license for 90 days pursuant to Alaska Stat. § 28.15.165.[2]

Rivera then moved to dismiss the pending state criminal charges, on the grounds that the revocation of his driver's license by the DMV was punishment, and that any further punishment would violate the Double Jeopardy Clause. The Alaska Superior Court denied his motion. On June 20, 1995, Rivera reached a plea agreement with the state of Alaska, pleading no contest to one count of refusing a chemical breath test under Alaska Stat. § 28.35.032,[3] and the state dismissed the other counts.

Rivera then filed a motion to extend the time to file his notice of appeal, because the Alaska State Court of Appeals had under consideration numerous appeals raising the identical double jeopardy claim advanced by Rivera. In July 1995, the Court of Appeals issued an opinion holding that an administrative license revocation was "remedial" in nature, and therefore subsequent criminal prosecution on the same grounds was not barred by the Double Jeopardy Clause. State v. Zerkel, 900 P.2d 744 (Alaska Ct.App.1995). The Alaska Supreme Court denied the petition for review in Zerkel.

1. Hon. Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

2. Alaska Stat. § 28.15.165 (Lexis Law Publishing 1998) is entitled "ADMINISTRATIVE REVOCATIONS AND DISQUALIFICATIONS RESULTING FROM CHEMICAL SOBRIETY TESTS AND REFUSALS TO SUBMIT TO TESTS." The statute in subsection (a) provides that an arresting officer must notify a person refusing to submit to a chemical breath test that the DMV intends to revoke his license and that he has a right to administrative review. Subsections (b) and (c) provide that the officer shall then seize the driver's license (providing the individual with a temporary seven-day permit), which will be revoked in seven days. A procedure for administrative review of the license revocation is set out in Alaska Stat. § 28.15.166.

3. Alaska Stat. § 28.35.032(f) (Lexis Law Publishing 1998) provides "Refusal to submit to the chemical [breath] test authorized by [Alaska statute] is a class A misdemeanor."

Rivera next filed a petition for a writ of habeas corpus on January 24, 1996 [4] under 28 U.S.C. § 2254 in federal district court in Alaska, presenting the same grounds for relief. He asserted that he did not pursue an appeal in the state supreme court because its denial of the petition for hearing in *Zerkel* rendered futile any further appeal by Rivera.

The State of Alaska filed a motion to dismiss Rivera's habeas petition for failure to exhaust state remedies. The district court denied the motion in August 1996 because further appeal in state court would have been futile. Rivera then filed his brief on the merits, asserting that there was a conflict between *Zerkel* and *Lundquist v. Department of Pub. Safety,* 674 P.2d 780 (Alaska 1983). The district court, reversing its prior position, decided that because Rivera was asserting an argument not presented in *Zerkel,* appeal in the state court would not have been futile and Rivera had failed to exhaust his state remedies. In January 1997, the district court dismissed Rivera's petition without prejudice.

Rivera appealed the dismissal of his habeas petition. On appeal, Rivera again argued that appeal in the Alaska state court would have been futile, and conceded at oral argument that *Zerkel* resolved the meaning of Alaska's license revocation scheme. This court agreed that further appeal in state court would be futile, and in an unpublished opinion held that Rivera had properly exhausted his state claims. *Rivera v. Pugh,* No. 97–35187, 1997 WL 812255 (9th Cir. Dec.24, 1997). The court remanded for consideration of Rivera's petition on the merits.

Back in the district court, Rivera again argued that *Zerkel* had misconstrued Alaska law and *Lundquist.* The district court rejected the argument and denied his habeas petition. Rivera now appeals.

---

4. Because the Anti–Terrorism and Effective Death Penalty Act applies only to cases filed after April 24, 1996, it does not apply to

## DISCUSSION

We review the district court's denial of a § 2254 habeas petition de novo. *See Eslaminia v. White,* 136 F.3d 1234, 1236 (9th Cir.1998). We also review de novo whether a punishment violates the Double Jeopardy Clause. *See United States v. McClain,* 133 F.3d 1191, 1193 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2386, 141 L.Ed.2d 752 (1998).

### I. *State law argument*

At the outset, we note that Rivera is foreclosed from arguing that *Zerkel* incorrectly interpreted Alaska law. In *Zerkel,* the Alaska court of appeals held:

> [A]dministrative license revocation continues to be a "remedial" sanction, not a "punitive" sanction, for purposes of the federal double jeopardy clause. Therefore, the administrative revocation of the defendants' licenses is no impediment to their later prosecution for driving while intoxicated, refusing the breath test, or both.

900 P.2d at 758. Rivera argues, as he did in the district court, that *Zerkel* misconstrued the purpose of the state statute, and that *Zerkel* conflicts with the Alaska Supreme Court's decision in *Lundquist.*

We do not address this question of Alaska law, which, as the panel in Rivera's earlier appeal pointed out, would have required exhaustion in state court: "A state prisoner may not argue for habeas relief in a federal court based on a state court's erroneous interpretation of state law." *Rivera v. Pugh,* 1997 WL 812255, at *1. Rivera cannot simultaneously retain his position in federal court because appeal in the state court would be futile *and* argue that the state court misapplied its own law, because that misapplication must be argued to the state court in the first instance. *See id.*

---

Rivera's petition. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

## II. *Federal double jeopardy principles*

■■■ "The Double Jeopardy Clause provides that no 'person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.' ... The Clause protects only against the imposition of multiple criminal punishments for the same offense...." *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997) (first alteration in original).

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.

*Id.* (quotations, citations and alterations omitted). To determine whether a remedy denominated "civil" is actually a punitive criminal penalty subject to the prohibition of double jeopardy, the court should consider whether the sanction (1) involves an affirmative disability or restraint; (2) has historically been regarded as punishment; (3) requires a finding of scienter; (4) will promote retribution and deterrence; (5) applies to behavior that is already a crime; (6) can have an alternative purpose; and (7) appears excessive in relation to the alternative purpose. *See id.* "[T]hese factors must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (quotations and citations omitted).

■■■ The Alaska legislature gave the legislation a "civil" label and provided for administrative review, which establishes a presumption that the legislation does not involve a criminal penalty. *See United States v. $273,969.04 U.S. Currency,* 164 F.3d 462, 465 (9th Cir.1999) (per curiam). The "clearest proof" is therefore required to establish that the remedy established by the Alaska statute is nevertheless so punitive in purpose or effect so as to be punishment subject to the prohibition against double jeopardy. *See Hudson,* 118 S.Ct. at 493.

An examination of the seven factors identified in *Hudson* fails to establish proof clear enough to override the presumption that license revocation is remedial rather than punitive.

■■■ First, license revocation does not involve an affirmative disability or restraint. An individual with a driver's license has been given a privilege by the state; license revocation is the loss of a privilege, rather than a punishment. It is immaterial that the inability to drive may severely impact some individuals who must drive, for example, to work. The statute is to be evaluated on its face, *see id.,* and "whether a sanction constitutes punishment is not determined from the defendant's perspective." *Department of Revenue of Mont. v. Kurth Ranch,* 511 U.S. 767, 777 n. 14, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *see United States v. Imngren,* 98 F.3d 811, 817 n. 4 (4th Cir.1996) (that appellants suffered as a result of the suspension of their driver's licenses is of no import in a double jeopardy analysis, citing *Kurth Ranch* ).

■■■ Second, license revocation has not been historically regarded as punishment. All the federal courts of appeal addressing the nature of driver's license revocation, including this court, have declared that it is remedial. *See, e.g., United States v. Schiller,* 120 F.3d 192, 194 (9th Cir.1997) (military suspension of driver's license intended to achieve safety-related civil and remedial goals); *Herbert v. Billy,* 160 F.3d 1131, 1137–39 (6th Cir.1998) (applying *Hudson* factors); *Imngren,* 98 F.3d at

816–17; *Allen v. Attorney Gen. of Me.*, 80 F.3d 569, 574 (1st Cir.1996). Further, to the extent that a license revocation statute has, in addition to its remedial purpose, some deterrent effect (which is often the purpose of a criminal statute), that does not transform the remedial statute into one that is punitive in the constitutional sense. *See Hudson*, 118 S.Ct. at 494 ("[a]ll civil penalties have some deterrent effect."); *Schiller*, 120 F.3d at 195; *Allen*, 80 F.3d at 574–75.

■ Third, Rivera argues that the license revocation scheme requires scienter, because the statute requires that the individual must be advised that his refusal to take the test will result in revocation of his license before the officer can seize the license. *See* Alaska Stat. § 28.15.165(a)(1). The statute thus requires that the defendant have knowingly violated its provisions. The Sixth Circuit has concluded that Ohio law requiring that the defendant be warned about license suspension is not equivalent to requiring scienter or guilty knowledge. *See Herbert*, 160 F.3d at 1137–38. We believe, however, that the Alaska statute's requirement that the officer inform the defendant of the consequences of refusing to submit to a chemical sobriety tests is equivalent to requiring that the defendant knowingly violate the statute. *See Noriega–Perez v. United States*, 179 F.3d 1166, 1173 (9th Cir.1999) (statute prohibiting "knowingly" engaging in the specified conduct requires scienter, "which is a traditional requirement of criminal liability"). This factor thus supports Rivera's claim that the license revocation penalty is criminal in nature. *See id.*

Fourth, as discussed above, a side effect of the revocation scheme may be deterrence, but that does not convert an essentially civil statute into a criminal penalty. " '[T]he mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals.' " *Id.* (quoting *Hudson*, 118 S.Ct. at 496) (quotations omitted). As discussed below, the statute also has a remedial purpose.

Fifth, the failure to provide a chemical breath test is also a crime, but "[t]his fact is insufficient to render the [administrative revocation] criminally punitive," as the same conduct may form the basis of two prosecutions. *Hudson*, 118 S.Ct. at 496; *see United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (rejecting rule barring subsequent prosecution when government will prove conduct constituting an offense for which defendant already has been prosecuted).

Sixth, the alternative remedial purpose of license revocation is to protect the public by removing dangerous drivers from the road, and in the case of those who refuse to take a breath test, to obtain reliable evidence of intoxication pursuant to the implied consent to a breath test given by each applicant for a driver's license. *See Zerkel*, 900 P.2d at 755.

Seventh, a ninety-day license revocation is not excessive in relation to the remedial goal of obtaining reliable evidence of intoxication, in service of the overall goal of protecting the public from intoxicated drivers.

■ Our review of the *Hudson* factors yields a mixed result, but one weighing heavily in favor of concluding that the statute does not impose a criminal punishment. We do not find the "clearest proof" that *Hudson* requires to show that this statute, denominated civil by the Alaska legislature, is actually criminal in nature. We therefore conclude that Rivera's prosecution for refusing to take a breath test, after the DMV had revoked his driver's license for the same refusal, did not violate the Double Jeopardy Clause.

AFFIRMED.