**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ROBERT REVELES,
*Defendant-Appellant.*

No. 10-30313

D.C. No.
CR 09-5883

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
August 3, 2011—Seattle, Washington

Filed October 24, 2011

Before: John T. Noonan and Milan D. Smith, Jr.,
Circuit Judges, and Andrew J. Guilford,* District Judge.

Opinion by Judge Guilford

*The Honorable Andrew J. Guilford, United States District Judge for
the Central District of California, sitting by designation.

19251

## COUNSEL

Michael Filipovic, First Assistant Public Defender, Seattle, Washington; Ulrike B. Connelly, Perkins Coie LLP, Seattle, Washington, for the defendant-appellant.

Jenny A. Durkan, United States Attorney, Barbara J. Sievers, Assistant U.S. Attorney, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

GUILFORD, District Judge:

This case concerns whether the Government violated the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution by prosecuting and convicting Robert Reveles for a crime after the Navy punished him for the same offense. The Government argues that the Double Jeopardy Clause is not implicated because the non-judicial punishment ("NJP") administered by the Navy under 10 U.S.C. § 815 is not criminal in nature. The Court agrees, and holds that the Government's prosecution of Reveles was not barred by the Double Jeopardy Clause. Reveles' conviction is AFFIRMED.

*FACTS*

The facts of this case are straightforward and undisputed. Reveles was accused of drunk driving in October 2009 on Kitsap Naval Base in Bremerton, Washington. Reveles was then charged by the Navy in an Article 15 Uniform Code of Military Justice ("UCMJ") proceeding, which is considered an NJP proceeding. The maximum punishment that the presiding officer could impose in the proceeding was: (a) diminished rations; (b) correctional custody; (c) forfeiture of pay; (d) reduction in pay grade; (e) extra duties; (f) restriction to limits; (g) detention; (h) an admonition; and (i) a reprimand. *See* UCMJ Art. 15(b). As discussed later, limitations on the severity of these punishments include a maximum of 30 days of correctional custody.

In the NJP proceeding, Reveles was found guilty of drunken operation of a motor vehicle, in violation of Article 111 of the UCMJ, and was sentenced to: (a) forfeiture of $200 of one month's pay; (b) a single-grade pay reduction (a total loss of $316 per month); (c) extra duty for 45 days; and (d) restriction to ship for 45 days.

Based on the same conduct, Reveles was later charged in federal court with drunk driving in violation of 18 U.S.C. §§ 7 and 13 and Revised Code of Washington § 46.61.502. Reveles pled not guilty and filed a Motion to Dismiss for Alleged Violations of the Double Jeopardy Clause ("Motion to Dismiss"), which was denied by a magistrate judge. While preserving his right to appeal the magistrate judge's denial, Reveles entered a conditional guilty plea and was sentenced to 24 hours in a detention center and a $375 fine. Reveles then appealed the magistrate judge's denial of his Motion to Dismiss to the district court. The district court denied his appeal in October 2010.

## *ANALYSIS*

**[1]** The Fifth Amendment's Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Clause protects only against the imposition of multiple criminal punishments for the same offense . . . ." *Rivera v. Pugh*, 194 F.3d 1064, 1068 (9th Cir. 1999) (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997) (emphasis in original)). In *Rivera*, the Supreme Court set forth the test we must apply:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.

*Id.* (quoting *Hudson*, 522 U.S. at 99).

**[2]** Thus, we must first determine whether Congress intended NJP to be criminal or noncriminal. And if NJP was intended to be noncriminal, we must then examine whether NJP is so punitive that it has been transformed into a criminal penalty.

## 1.   WHETHER CONGRESS INTENDED NJP TO BE CRIMINAL

Reveles argues that Congress intended NJP to be criminal in nature. This argument fails.

"The UCMJ provides four methods for disposing of cases involving offenses committed by servicemen: the general, special, and summary courts-martial, and disciplinary punishment administered by the commanding officer pursuant to Art. 15 UCMJ, 10 U.S.C. § 815." *Middendorf v. Henry*, 425 U.S. 25, 31 (1976). Unlike courts-martial, which resemble judicial proceedings, NJP "is an administrative method of dealing with the most minor offenses." *Id.* at 31-32 (internal citations omitted).

When interpreting a statute, "we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Zuress v. Donley*, 606 F.3d 1249, 1252-53 (9th Cir. 2010) (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)). A review of the NJP statute's plain language reveals that Congress intended it to be noncriminal in nature.

**[3]** The text of the statute shows an intent to distinguish minor NJP disciplinary proceedings from criminal proceedings. *See* 10 U.S.C. § 815. According to the statute, NJPs are "disciplinary punishments for minor offenses without the intervention of a court-martial . . . ." *Id*. at § 815(b). The title of the statute, "Commanding officer's *non-judicial punishment*," confirms Congress' intent to distinguish NJP from tra-

ditional criminal proceedings. *Id.* (emphasis added); *but see State v. Ivie*, 961 P.2d 941, 945 (Wash. 1998) (state court holding that the statute's title indicated NJP was criminal, rather than civil, in nature). Thus, the language of the NJP statute indicates that Congress intended NJP to be noncriminal in nature.

**[4]** Legislative history confirms Congress' intent to make NJP noncriminal. The Senate Armed Services Committee commented that NJPs "deal with minor infractions of discipline *without resorting to criminal law processes.*" S. Rep. No. 87-1911, at 2 (1962) (emphasis added). It further stated that these punishments are "non-judicial" and are "*not considered as a conviction of a crime* and in this sense ha[ve] no connection with the military court-martial system." *Id.* (emphasis added).

**[5]** The Manual for Courts-Martial ("MCM") and the Manual of the Judge Advocate General, Department of the Navy ("JAGMAN"), are also helpful in determining the intended nature of NJP. Although neither of these documents is technically "legislative history," each of them confirms an intent to make NJP a noncriminal sanction. Specifically, the MCM states that NJP's purpose is to "promote[ ] positive behavior changes in servicemembers without the stigma of a court-martial conviction." MCM, pt. V, ¶ 1c (2008). And the JAGMAN's description of "Captain's Mast" proceedings—an alternate name for modern-day NJP proceedings—corroborates this purpose:

> Captain's mast/office hours that results in nonjudicial punishment *is not a criminal trial; it is a disciplinary proceeding. . . .* Such punishment is designed for minor misconduct in a nonjudicial forum, without the permanent stigma of a record of "Federal conviction." As such, the standard of proof by which facts must be established at mast or office hours is

> a "preponderance of the evidence," rather than "beyond a reasonable doubt," as it is at courts-martial.

JAGMAN § 0110(b) (emphasis added).

To support his argument that the MCM indicates that NJP is criminal in nature, Reveles notes that the MCM defines a "criminal proceeding" to include "nonjudicial punishment proceedings." MCM, pt. IV, ¶ 96c. Reveles also cites a case from the U.S. Court of Appeals for the Armed Forces, *United States v. Arriaga*, 49 M.J. 9, 12 (C.A.A.F. 1998), that refers to this definition.

**[6]** But the MCM section and case Reveles cites both concern obstruction of justice charges. The MCM section states that "*[f]or purposes of this paragraph* [concerning obstruction of justice], 'criminal proceedings' includes nonjudicial punishment proceedings . . . ." MCM, pt. IV, ¶ 96c (emphasis added). Thus, while the MCM appears to extend obstruction of justice charges to conduct concerning NJP proceedings, it never indicates that NJP is criminal in nature. Reveles' argument that this narrow provision has greater applicability is unpersuasive.

Numerous courts have also recognized that Congress intended NJP to be noncriminal. For example, the Armed Forces Court of Appeals has stated that "the title of the [NJP] legislation—'Commanding officer's non-judicial punishment'—underscores the legislative intent to separate NJP from the judicial procedures of the military's criminal law forum, the court-martial." *United States v. Gammons*, 51 M.J. 169, 177 (C.A.A.F. 1999). Similarly, the United States Court of Claims has held that "nonjudicial punishment, unlike the general and special court-martial, is not a formal adversary criminal proceeding, but is regarded as noncriminal in nature." *Wales v. United States*, 14 Cl. Ct. 580, 587 (1988) (citing *Fairchild v. Lehman*, 814 F.2d 1555, 1558 (Fed. Cir. 1987)); *see also Cochran v. United States*, 1 Cl. Ct. 759, 764 (1983); *Dumas*

*v. United States*, 620 F.2d 247, 251-52 (Ct. Cl. 1980); *United States v. Trogden*, 476 F. Supp. 2d 564, 568 (E.D. Va. 2007); *State v. Myers*, 58 P.3d 643, 646 (Haw. 2002); *but see United States v. Volpe*, 986 F. Supp. 122 (N.D.N.Y. 1997); *Arriaga*, 49 M.J. at 12; *Ivie*, 961 P.2d at 945.

Reveles argues that *Volpe* and *Arriaga* expose a split among federal courts concerning the categorization of NJP. But *Volpe* is distinguishable because the magistrate judge in that case did not conduct a *Hudson/Rivera* analysis when considering defendant's Double Jeopardy arguments. *Volpe*, 986 F. Supp. at 124-26. And *Arriaga* does not support Reveles' argument because that case involved NJP in an obstruction of justice context. Although *Ivie* is largely on point, it is a state-law case with a dissent that conforms to the majority of federal case law on this issue. *Ivie*, 961 P.2d at 948. Reveles' contention that federal and military courts are split on this issue is unpersuasive.

Reveles makes several other arguments seeking to show that Congress actually intended NJP to be criminal. Reveles argues, for example, that the MCM prohibits internal double punishment, and that NJP may not be imposed for the same offense more than once. *See* MCM, pt. V, ¶ 1f.(1). Reveles also argues that the MCM prohibits the imposition of NJP for an offense tried by a federal court. *See id.*, pt. V, ¶ 1f.(5).

But Reveles overstates his arguments concerning multiple prosecutions and punishments. Although MCM regulations generally forbid imposing NJP on a servicemember after he has been prosecuted civilly, they do not preclude prosecution in a civilian court after NJP has been imposed. *See* MCM, pt. V, ¶ 1f.(5). Further, in the military setting, "nonjudicial punishment for an offense other than a minor offense (even though thought by the commander to be minor) is not a bar to trial by court-martial for the same offense." MCM, pt. V, ¶ 1e (citing R.C.M. 907(b)(2)(D)(iv)) (but recognizing that the MCM allows an accused at a court-martial to show previ-

ous imposition of NJP to mitigate a possible court-martial sentence).

Reveles separately argues that NJP proceedings contain due process safeguards traditionally associated with criminal proceedings. Reveles is correct that some of these safeguards exist, including the right of the accused to receive notice of charges and to be present at NJP proceedings. But the presence of these procedural safeguards does not negate Congress' intent to create an "essential and prompt means of maintaining good order and discipline" in the military. MCM, pt. V, ¶ 1c. In fact, other rules typically included in criminal proceedings, such as formal rules of evidence, are absent from NJP proceedings. MCM, pt. V, ¶ 4c.(3). Moreover, at least one military branch — the Navy — uses a "preponderance of the evidence" standard rather than the "beyond a reasonable doubt" standard that is the hallmark of criminal trials. *Turner v. Dep't of Navy*, 325 F.3d 310, 313 (D.C. Cir. 2003); JAG-MAN § 0110(b). The "preponderance of the evidence" standard indicates that NJP proceedings were not intended to be criminal.

**[7]** Because we hold that Congress intended NJP to be noncriminal in nature, we now consider whether NJP is "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Rivera*, 194 F.3d at 1068.

## 2. WHETHER THE STATUTE IS SO PUNITIVE THAT IT TRANSFORMS THE CIVIL REMEDY INTO A CRIMINAL PENALTY

Reveles argues that NJP is so punitive that it has been transformed into a criminal penalty. *Rivera*, 194 F.3d at 1068. This argument fails.

To determine whether a remedy denominated "civil" is actually a punitive criminal penalty subject to the prohibition

of double jeopardy, a court should consider whether the sanction

> (1) involves an affirmative disability or restraint; (2) has historically been regarded as punishment; (3) requires a finding of scienter; (4) will promote retribution and deterrence; (5) applies to behavior that is already a crime; (6) can have an alternative purpose; and (7) appears excessive in relation to the alternative purpose.

*Id.* (citing *Hudson*, 522 U.S. at 99). "These factors must be considered in relation to the statute on its face, and *only the clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (citing *Hudson*, 522 U.S. at 99) (emphasis added). With this very high burden, even a showing that most of the relevant factors weigh in favor of considering a punishment criminal in nature may be insufficient to transform it into a criminal punishment.

We now review the relevant factors as they apply to NJP.

### 2.1  Whether NJP Involves an Affirmative Disability or Restraint

A punishment that involves imprisonment or another form of restraint is more likely to be criminal, rather than civil, in nature. *See Hudson*, 522 U.S. at 104; *Trogden*, 476 F. Supp. 2d at 569-70.

NJP includes the possibility of 30 days "correctional custody" under certain circumstances. 10 U.S.C. § 815(b)(2)(B). Correctional custody may include confinement at hard labor, punishment the Supreme Court has recognized as "the military equivalent of imprisonment." *Middendorf*, 425 U.S. at 35. Thus, although Reveles was not ultimately subjected to such punishment, NJP may "involve[ ] an affirmative disabil-

ity or restraint." *Rivera*, 194 F.3d at 1068 (citing *Hudson*, 522 U.S. at 99).

**[8]** But as the Court stated in *Middendorf*, "the fact that confinement will be imposed in the first instance as a result of [a] proceeding [does not] make it a 'criminal prosecution.' " *Middendorf*, 425 U.S. at 35-37 (citing various cases and noting differences between the adversarial nature of criminal proceedings and noncriminal proceedings). This is especially true in the NJP setting where the maximum correctional custody term is limited to 30 days.

This factor favors considering NJP to be criminal in nature.

## 2.2   Whether NJP Has Historically Been Regarded As Punishment

If a sanction has historically been regarded as punishment, it is more likely that the sanction is criminal, rather than civil, in nature. *See Hudson*, 522 U.S. at 104; *Trogden*, 476 F. Supp. 2d at 570.

NJP has historically been regarded as punishment. NJP originates from proceedings where Navy commanders could "correct those who are guilty" of rule infractions using a "Captain's Mast." S. Rep. No. 87-1911, at 2 (1962). Harsh punishment was available under those Captain's Mast proceedings, including the possibility of lashing, flogging, being shot out of a cannon, and keelhauling.

Modern-day NJP also has been historically regarded as punishment. As noted, NJP includes the possibility of 30 days confinement at hard labor. *See* 10 U.S.C. § 815(b). And although the Captain's Mast punishments were certainly more severe than those administered under modern-day NJP, the fact remains that NJPs are still punishments. See *Middendorf*, 425 U.S. at 35-37.

This factor favors considering NJP to be criminal in nature.

### 2.3 Whether NJP Requires a Finding of Scienter

"[S]cienter . . . is a traditional requirement of criminal liability . . . ." *Noriega-Perez v. United States*, 179 F.3d 1166, 1173 (9th Cir. 1999). Thus, if a punishment requires a finding of scienter, it is more likely to be criminal, rather than civil, in nature. *Id.*

NJP does not require a finding of scienter. Although NJP may result from offenses that include a scienter requirement, a commanding officer may impose NJP regardless of the defendant's state of mind. *See* 10 U.S.C. § 815; MCM, pt. IV, ¶¶ 16 (failure to obey order or regulation), 59 (conduct unbecoming an officer and gentleman). Reveles' particular situation confirms this, since a finding of intent was apparently not required to issue NJP for his infraction.

This factor weighs against considering NJP to be criminal in nature.

### 2.4 Whether NJP Promotes Retribution and Deterrence

Punishment that furthers the objectives of retribution and deterrence is more likely to be criminal, rather than civil, in nature. *See Hudson*, 522 U.S. at 105; *Trogden*, 476 F. Supp. 2d at 570.

Although NJP likely deters certain misconduct, that alone does not render NJP criminal in nature. As the Supreme Court stated in *Hudson*, deterrence "may serve civil as well as criminal goals." *Hudson*, 522 U.S. at 105 (citing *United States v. Ursery*, 518 U.S. 267, 292 (1996)). More importantly, as "disciplinary" sanctions for "minor" offenses, NJP should not be viewed as promoting retribution. *See* 10 U.S.C. § 815(b).

This factor is neutral.

### 2.5   Whether NJP Applies to Behavior That Is Already a Crime

If punishment applies to criminal behavior, it follows that it is more likely that the punishment is criminal, rather than civil, in nature. *See Hudson*, 522 U.S. at 105; *Trogden*, 476 F. Supp. 2d at 570.

NJP may be imposed for many acts and omissions included in the MCM punitive articles that are also civilian crimes. *See, e.g.*, MCM, pt. IV, ¶¶ 54 (assault), 55 (burglary), 57 (perjury). But NJP may also be imposed for many minor offenses that are not civilian crimes. *See, e.g.*, *id.*, pt. IV, ¶ 13 (disrespect toward a superior commissioned officer); *see also Parker v. Levy*, 417 U.S. 733, 749-51 (1974) (discussing differences between civilian and military punishments and noting that various forms of conduct punishable in the military do not have corresponding civilian crimes). Thus, although NJP may be administered for behavior that is already a crime, criminal behavior is not a requirement for the imposition of NJP.

This factor is neutral.

### 2.6   Whether NJP Has an Alternative Purpose

Statutes authorizing punishments that have purposes other than furthering the traditional criminal justice objectives of deterrence and retribution are less likely to be criminal in nature. *See Hudson*, 522 U.S. at 105; *Trogden*, 476 F. Supp. 2d at 570-71.

As noted, "[n]onjudicial punishment provides commanders with an essential and prompt means of maintaining good order and discipline and also promotes positive behavior changes in servicemembers without the stigma of a court-

martial conviction." MCM, pt. V, ¶ 1c. Thus, a primary purpose of NJP is to maintain military order, a purpose distinct from those underlying traditional criminal punishment.

Indeed, military "discipline is not achieved exclusively or even primarily through use or threat of the military criminal law process, the court-martial." *Gammons*, 51 M.J. at 178. "Commanders use a combination of tools to maintain discipline, including leadership by example, training, corrective measures, administrative actions authorized by applicable regulations, and NJP . . . ." *Id.*

This factor weighs against considering NJP to be criminal in nature.

### 2.7  Whether NJP Appears Excessive Compared to Its Alternative Purpose

Statutes authorizing relatively severe punishments are more likely to be criminal in nature. *See Hudson*, 522 U.S. at 105; *Trogden*, 476 F. Supp. 2d at 571. Here, it is necessary to compare the severity of NJP with its purpose of maintaining military discipline.

NJP is not excessive relative to this purpose. Congress set limits on sanctions in the NJP statute, including a maximum of 30 days confinement at hard labor. A month of confinement is not insignificant, but neither is it excessive when weighed against the military's need to maintain strict order and discipline.

The severity of NJP is especially reasonable, the Government argues, when considered with the military's mission. Indeed, the Supreme Court has stated that, when it comes to military discipline, courts should show deference to the armed forces because

> the rights of men in the armed forces must be conditioned to meet certain overriding demands of disci-

pline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers especially entrusted that task to Congress.

*Burns v. Wilson*, 346 U.S. 137, 140 (1953); *see also Rostker v. Goldberg*, 453 U.S. 57, 70 (1981) ("Judicial deference to . . . congressional exercise of authority is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged."). Such deference is a relevant factor when determining whether NJP is excessive relative to the objective it furthers.

This factor weighs against considering NJP to be criminal in nature.

### 2.8   Conclusion on Rendering NJP to Be Criminal

**[9]** Although NJP may result in 30 days of confinement at hard labor and has historically been regarded as punishment, most of the factors indicate that NJP is noncriminal in nature. And when considered together, these factors fall short of the "clearest proof" necessary to "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Rivera*, 194 F.3d at 1068 (citing *Hudson*, 522 U.S. at 99).

### 3.   STATUTORY ANALYSIS CONCLUSION

**[10]** Congress intended NJP to be noncriminal, and the effect of the NJP statute is not sufficiently punitive as to render it a criminal penalty. *See Rivera*, 194 F.3d at 1068 (citing *Hudson*, 522 U.S. at 99). Because NJP is noncriminal in nature, it does not implicate the Double Jeopardy Clause.

## 4. SUPREME COURT PRECEDENT SUPPORTS A HOLDING THAT NJP IS NONCRIMINAL IN NATURE

Although the Supreme Court has not spoken directly on whether NJP is criminal in nature, it addressed a similar issue in *Middendorf*. 425 U.S. at 25. In that case, the Court held that "even were the Sixth Amendment to be held applicable to court-martial proceedings, the *summary* court-martial . . . was not a 'criminal prosecution' within the meaning of that Amendment." *Id.* at 34.

A summary court-martial "occupies a position between informal nonjudicial disposition under [UCMJ] Art. 15 and the courtroom-type procedure of general and special courts-martial." *Id.* at 32. By contrast, NJP "is an administrative method of dealing with the most minor offenses." *Id.* at 25. Summary courts-martial can also result in greater sanctions than NJP, including "one month's confinement at hard labor; 45 days' hard labor without confinement; two months' restriction to specified limits; reduction to the lowest enlisted pay grade; and forfeiture of two-thirds pay for one month." *Id.* at 33 (citing 10 U.S.C. § 820).

*Middendorf* concerned the Sixth Amendment right to counsel while this case concerns the Fifth Amendment Double Jeopardy Clause. Still, *Middendorf* supports the conclusion that NJP does not implicate the Double Jeopardy Clause. Because summary courts-martial do not rise to the level of criminal proceedings and are more criminal in nature than NJP, it would defy logic, and the Supreme Court holding in *Middendorf*, to characterize NJP as criminal.

### *CONCLUSION*

[11] NJP under 10 U.S.C. § 815 is noncriminal in nature. Thus, the Government's criminal prosecution of Reveles was

not barred by the Double Jeopardy Clause.

**AFFIRMED.**